STATE, Plaintiff, vs. BRADFORD, Defendant.

*December 4, 1934—March 5, 1935.*

390

*Spencer Haven* of Hudson, attorney for plaintiff and counsel for Board of State Bar Commissioners.

For the defendant there were briefs by *Frawley & Stolts*, attorneys, and *W. H. Frawley, Jr.*, of counsel, all of Eau Claire.

PER CURIAM. The findings of the referee are vigorously assailed by counsel for the defendant. We have examined the record, and it is considered that the findings are not against the clear preponderance and great weight of the evidence. In the determination of the facts the referee had to consider the testimony of witnesses for the state which was contradicted by the defendant. While the state's testimony was not without corroboration, in some respects, the determination depended upon the credibility of the witnesses. This has always been held to be a matter very largely for the trier

of the facts. We discover no grounds upon which the determination of the referee with reference to the facts can be disturbed.

The principal question presented here is whether or not the facts found by the referee support the conclusion of the referee that the defendant should be suspended from the practice of the law, and, if so, for how long a time. No more difficult questions are presented to this court than those involving the future status of an attorney of this court who has been guilty of misconduct in his high office as attorney. For many years the defendant has been a man with large business and professional interests, has enjoyed to a high degree the confidence of the community in which he has lived and worked. He is a man now seventy-four years of age, and through unfortunate investments and the financial collapse now finds himself not only insolvent but charged with serious misconduct as an attorney. In *State v. Barto,* 202 Wis. 329, 232 N. W. 553, it was pointed out that every attorney is required to conform to certain standards in three principal relations: (1) In his relation to his client; (2) in his relation to the courts and fellow practitioners; and (3) in his relation to the public involving matters generally included within the broad term *"public policy."*

Failure of an attorney to perform his duty to his client seems even more reprehensible than a violation of his duty to the court or to the public because it involves a breach of a trust, taking advantage of a confidential relation to promote his own interest or that of some third party. The greater a man's reputation, the more confidence the public has in him, the greater reliance his clients place upon him, the more serious a breach of trust by him becomes. The fact that a man has enjoyed a high reputation and won the confidence and trust of his clients does not excuse him, but rather makes his breach of trust the more culpable. The greater a man's ability, the larger his experience, the more clearly should he be able to see and distinguish the moral implications of a

breach of his duty. So it is often said the higher a man rises the greater his fall when he yields to temptation or the pressure of circumstances.

It is probably true, as stated in briefs of counsel, that the defendant yielded not because of direct financial profit to him, but because he wished to help out his associates, and believed that ultimately everything would come out so that no one would sustain a loss. As trusted adviser of Moldenhauer he permitted him at least, if he did not urge him, to go into a transaction which he as a lawyer should have known was not only unlawful, but might subject Moldenhauer to civil liability. He took advantage of his relationship with parties named in Counts II and III to borrow money, no doubt with the expectation of repayment. When an attorney deals with a client he carries a heavy burden if the character of the transaction is brought into question, as was held in *Armstrong v. Morrow,* 166 Wis. 1, 163 N. W. 179.

It is obvious that Emma Thiel relied upon the defendant as counselor and adviser. She was a woman with little or no business experience, brought her money to the defendant to be loaned upon security, and is now left with a worthless obligation of the defendant. The conduct of the defendant in connection with his duties as stockholder, director, and attorney for the Augusta State Bank, particularly the attempt to disguise his personal liabilities, discloses a lack of discernment and a willingness to join with others in a course of illegal conduct which resulted in a loss of assets to the bank, which was serious.

Claim is made that it was the custom of lawyers in the vicinity where the defendant lived to loan out trust funds on unsecured notes in violation of the statute. If such was the fact, it affords no justification for the conduct of the defendant, a lawyer. Such a plea is a confession of incompetency or untrustworthiness. Defendant's misconduct shows a lack

of appreciation of his duty to those to whom he stood in the relation of trustee, adviser, and fiduciary. Under the circumstances, suspension from practice becomes a serious matter to the defendant. On the other hand, there is no way to reconcile the conduct of the defendant with the duty an attorney owes his client. Prompted alone by our sympathy for an old man in straitened circumstances, we might dismiss the petition. That would be a failure to perform our duty as culpable as the conduct of the defendant. Were the defendant a young man who could reshape his life a longer period of suspension would be warranted. Two years is a considerable fraction of defendant's expectancy of life.

It is hereby ordered and adjudged that the defendant pay the costs of this proceeding, and be suspended from the practice of the law for a period of two years from April 1, 1935, without prejudice to thereafter apply for reinstatement upon showing that he has fully complied with this order.