STATE, Plaintiff, vs. MacINTYRE, Defendant.

*April 18—October 7, 1941.*

408

*Harlan B. Rogers,* special counsel for the Board of State Bar Commissioners, for the plaintiff.

For the defendant there were briefs by *Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau* and by *Darrell D. MacIntyre* of Madison *in pro. per.*

The following opinion was filed May 20, 1941:

PER CURIAM. The basis of the charge warranting disciplinary measures against the defendant is set forth in the first and second counts of the petition for his disbarment. These counts relate to defendant's action in the preparation of a complaint in the divorce action commenced by him for one Elma Franzak. His effort was to secure a favorable result for a client by misleading the trial judge by a false statement of fact.

The misgivings which a consideration of this charge aroused are caused by the character of the accusing witnesses. In the state's brief the statement is made that it is unfortunate that an attorney with the years of experience and standing of the defendant should have charges filed against him and that such charges should be supported by the testimony of persons of doubtful moral and financial responsibility. This statement was made with reference to all of the charges against Mr. MacIntyre and is especially applicable to the first count. A wholly disinterested witness characterized Mrs. Franzak as a moral delinquent, a person who would lie unnecessarily, and who was wholly untrustworthy so far as veracity is concerned. Her general bad character, however, does not render her testimony false as a matter of law. There is nothing inherently improbable in her story, and she is corroborated by the testimony of her mother and by the testimony of Mr.

MacIntyre's secretary. Some suggestion is made that Mrs. Franzak's mother was no more reliable than she, but certainly there is a difference in degree between the two so far as the record is concerned. However, we shall pass that matter. Mr. MacIntyre's secretary, who was of undoubted veracity and was in no manner impeached, testified that Mrs. Franzak came to the MacIntyre office just as she had testified she did for the purpose of examining the complaint which had been prepared in her divorce case. Mrs. Franzak stated to the secretary that she did not understand certain parts. The allegation that Mrs. Franzak did not understand was the one about her residence. She asked: "What does that mean?" And the secretary testified:

"I told her that it meant that she had to be a resident of the state for two years in order to get a divorce. She acted kind of bewildered right away and wanted to see Mr. MacIntyre. . . ."

She then was admitted to Mr. MacIntyre's office and undoubtedly had a conference with him, after which she verified the divorce complaint and later swore that she was a resident of the state for two years preceding the commencement of the action.

From this the referee was entitled to conclude and in fact could hardly avoid the conclusion that Mrs. Franzak was greatly concerned at the inclusion of this allegation in the complaint—concerned to the point where she asked an immediate interview on the matter with Mr. MacIntyre. The only concern she could have had, had to do with the facts concerning her residence here, and the referee had a right to believe and conclude that she detailed those facts to Mr. MacIntyre. At this point the question naturally arises whether this is not a case where a lawyer has had the facts told to him and has determined that in legal effect they constituted a two-year residence. The facts, however, do not warrant such a conclusion.

Mrs. Franzak was married in Chicago, Illinois, June 27, 1931. In that year she spent some months with her mother at Madison, Wisconsin, but after November they were in Chicago where they stayed until September, 1932. There was another visit to Madison but in September, 1933, Mrs. Franzak and her husband returned to Chicago where they lived until May or June of 1938. Hence, if the scattered times during which Mrs. Franzak was in Madison over a period of seven and one-half years immediately preceding the complaint in the divorce action are all added together, they total no more than one year and ten months. Mrs. Franzak did not vote anywhere, but her husband voted in Illinois. It was in November of 1938, but a few months after Mrs. Franzak's return to Madison and after she had completed a continuous stay of four years and nine months in Chicago, that the defendant set forth the misleading and false statement of fact in the complaint which was later presented in the circuit court. On the basis of these facts there can be no reasonable difference of opinion that she had not lived in the state for the two years immediately preceding the commencement of the action as required by sec. 247.06, Stats.

We are, therefore, faced with the fact that Mrs. Franzak has testified to having laid the facts before Mr. MacIntyre and to having been told in spite of them to verify an allegation that she had resided in Wisconsin for a period of two years immediately preceding the action; that Mrs. Franzak, although not of good reputation either for veracity or in other respects, is corroborated by the unimpeached evidence of Mr. MacIntyre's secretary at least to the extent that she showed immediate and noticeable concern at the inclusion of this allegation in the complaint, requested an immediate interview with Mr. MacIntyre and ultimately verified the complaint; that on the facts of her residence no reasonable opinion could be entertained in support of the allegation; and that Mrs. Franzak ultimately pleaded guilty to deliberate perjury in

connection with this allegation. Under all of these circumstances, we consider that the findings of the referee on these counts must be sustained. *State v. Barto,* 202 Wis. 329, 232 N. W. 553; *State v. Bradford,* 217 Wis. 389, 259 N. W. 109. It is unnecessary to enlarge upon the seriousness of the offense. The advice was to swear to what was false both in fact and in legal effect. The matter sworn to was to be presented to a court of which defendant was an officer, and was to be the basis of action by the court. This presentation was to be by a subordinate whose knowledge of the facts was comparatively superficial and whose reliance upon his superior's judgment was to be confidently expected.

Count 4 charges misapplication of funds deposited with defendant for a special purpose. The referee was of the opinion that the defendant did not treat honestly with Mrs. Hagen. He correctly states the rule that when money is left with an attorney for a special purpose the attorney has no authority to appropriate the money to any other use against the client's objections. This presents the question as to what the understanding between the parties really was. Mrs. Hagen, a client of defendant, after having had work done by Mr. MacIntyre in two divorce cases contemplated the beginning of a suit for alienation of her husband's affections against a certain woman and $50 was paid to Mr. MacIntyre by his client at that time. After some preliminary steps it was found that the woman in the case had left the state and the action for alienation of affections was never begun. There was, however, an account upon Mr. MacIntyre's books according to which Mrs. Hagen was indebted to him for services and expenses amounting to $201. Mrs. Hagen's former husband had paid $57.50 and when Mrs. Hagen was credited with the $50 there was a total credit in her favor of $107.50. Mrs. Hagen claimed that the $50 was paid for special services and that only $33 ought to be charged against

the special account which would leave $17 due her. Defendant evidently failed to have his client definitely understand what services he was performing for her and for what he was making the charges. With reference to this count defendant says: "When she paid the $50 I assumed it was paid on account."

As already appears, the complaining witness had begun one divorce case and then later had begun another in which she succeeded in getting a divorce and the custody of the children. She testified as follows with relation to the second divorce case: "When I went to see Mr. MacIntyre I was dubious as to whether he would take the case because my ex-husband had not paid him for the previous time but he said that because I had no money, he would accept the case. I think it was understood that he was to get his pay from my husband and I did not expect to pay his fees and disbursements. He did not ask for any pay in advance nor did he at any time ask for any money in connection with the case." It was while the second divorce was pending that she talked with Mr. MacIntyre about the alienation-of-affections case. Other work was done for the complaining witness by Mr. MacIntyre for which it would be expected that charges would be made. A misunderstanding between Mrs. Hagen and the defendant existed. The services he rendered for her may be considered to be a proper basis for charges by him for professional work actually performed. The situation thus developed does not show defendant sufficiently at fault to warrant disbarment.

Count 5 charged that in representing Thomas Holtan the defendant settled a case for $250 and failed to make proper return to his client. Mr. MacIntyre took this case upon a thirty-five per cent contingent-fee basis. Twenty-five dollars was paid to cover the costs of the action when Mr. MacIntyre was retained. The state contends that the defendant had no right to charge a retainer fee and that under the present state of the account he has withheld from his client at least $18.

Here again the confusion may be due to carelessness rather than malicious conduct. The case was settled for $250, payable $10 per month. That amount has been regularly paid. At the time of hearing upon these charges $120 had been collected. Of that amount $85 has been paid to the client. Defendant claims that his services at the time of the hearing warranted a charge of $42. As observed, there is a dispute as to the exact balance due, the amount depending upon whether defendant has any right to retain all the $25 advanced for expenses. The matter of collection is still in process and there has never been a severance of the relation of attorney and client. The time for final accounting is in the future because of the possibility of further services on the part of defendant in the matter of making collections. It is therefore considered that these circumstances disclose a situation in which an ordinary civil action would dissolve the difficulty, and that the finding of misappropriation is against the great weight and clear preponderance of the evidence.

Count 6 relates to misconduct by reason of alleged overreaching of a client and making excessive charges for services. This matter arose out of the following set of circumstances: A Mr. Charles C. Bennett some seventy-nine years of age willed all of his property to his wife twenty-seven years of age to whom he had been married about a year and four months before his death. A will contest was begun. The attorneys presenting the will for the executrix withdrew from the case because the beneficiary Mrs. Bennett desired a change. Defendant MacIntyre was retained to complete the probate of the will. The objections were later withdrawn but there were the usual objections and contests incidental to the settlement of estates such as objections to claims filed and actions begun to collect assets. The inventory of the estate, including real and personal property, was about $9,400. On December 4, 1936, the final order in the estate was entered. In the

final account defendant was allowed $1,500 for attorney's fees, but Mrs. Bennett claims that early in the proceedings he told her that the charge would not exceed $250. The amount of $1,500 was approved by the county judge. On December 5, 1936, an agreement was signed by Mrs. Bennett and the defendant to the following effect:

"It is understood and agreed that Mrs. Zilpha Bennett is to pay me the further sum of fourteen hundred fifty dollars in addition to the money already paid me to be in full for attorney fees on the estate, personal matters handled by me and for services to be rendered on the actions now pending outside of Dane county and in the state of Wisconsin, any money collected on the actions now pending are to be applied on my account until the fourteen hundred fifty has been paid and the balance to go to Mrs. Bennett and I agree not to take any cases against Mrs. Bennett in the future should I have the opportunity."

The testimony shows that at the time the agreement for additional fees was signed MacIntyre had collected $2,590.61 out of which he disbursed $1,314.95, thus leaving to apply upon the fee allowed him $1,275.66. There was, as the referee found, $224.34 due to him when he procured the agreement from Mrs. Bennett to pay him an additional $1,450. This is claimed by defendant to include a retainer fee and payment for services to be rendered in the future. The referee found, however, that $400 would be a fair compensation for work other than on the estate and that not to exceed $100 would be a fair retainer fee. These items total $724.34. The conclusion of the referee was that "there was no prospect of other cases being handled by him in her [Mrs. Bennett's] behalf and that at least $700 of the said contract for $1,450 covered a situation where no value was given, or could reasonably be expected to be given, therefor." While letters written by Mrs. Bennett indicate a disposition on her part to discover occasions for controversy and that she is in the habit of

complaining about those with whom she has had business dealings, there is no evidence of any imminent or prospective proceeding to warrant a retainer fee exceeding that suggested by the referee as reasonable under the evidence. It must be considered, however, that Mrs. Bennett would at least occasionally consult some attorney. This phase of the case must be dealt with in the light of a presumption that unfairness or invalidity attaches to a contract for compensation executed by an attorney and his client after the establishment of the fiduciary relation. The burden of proof in such an instance is with the attorney to show the reasonableness and fairness of such a transaction. 5 Am. Jur. p. 375, § 189; 7 C. J. S. p. 966, § 127 b; 19 A. L. R. 855; 2 R. C. L. p. 1038, § 120, and cases cited. We agree that the referee properly concluded that the defendant failed to bring forth evidence to vindicate him in exacting the contract for $1,450 and that $700 thereof is an excessive charge.

Ordinarily it is only when the fees exacted under a contract are clearly excessive that a member of the profession subjects himself to discipline. As suggested by the referee, the real question as to the propriety of the contract between Mrs. Bennett and Mr. MacIntyre turns upon the apparent excessiveness of the charge made and circumstances attendant thereon. The evidence sustains the findings and warrants the conclusion reached by the referee as to the excessive charge. We are of the opinion, however, that considering all the circumstances of the transactions between the defendant and his client, Mrs. Bennett, that disciplinary measures short of disbarment would serve to cure the impropriety of defendant's conduct and that the criticism here made together with a requirement of a release of the excessive charge as a condition to reinstatement in the practice of the profession is sufficient reprimand.

We agree with the referee that the defendant has violated his duty as an attorney and deserves disciplining at the hands of the court. We are of the opinion that the determination of guilt under the fourth and fifth counts cannot be sustained; and that under the sixth count the acts of the defendant are subject to and deserve a reprimand. Since the fourth, fifth, and sixth counts were taken into consideration by the referee in his recommendation of a suspension for two years and we have found the determination upon two counts to be against the great weight and clear preponderance of the evidence, and have limited the effect of the findings on the sixth count as set forth, the suspension will be for one year. In other respects the findings and recommendations of the referee are adopted.

It is therefore ordered and adjudged that the license of the defendant be revoked and suspended for the period of one year from July 1, 1941, and thereafter until the same may be restored. That he be reinstated only upon presentation of evidence showing to the court that he has paid the costs of these proceedings, including the fees of the reporter, referee, and clerk of the court; that he has released his excessive charge against Mrs. Bennett; that he has refrained, in the meantime, from the practice of law; and upon giving satisfactory assurances that he will not, if reinstated, be again guilty of the conduct and practices referred to herein.

A motion for a rehearing was denied, without costs, on October 7, 1941.