IN MATTER OF DISCIPLINARY PROCEEDINGS AGAINST MARINE, Attorney at Law.

*No. 76-479-D. Argued November 30, 1977.—
Decided March 7, 1978.*
(Also reported in 264 N.W.2d 285.)

For Board of State Bar Commissioners: Brief and oral argument by *Robert H. Bichler* of Racine.

For Respondent: *Gerald F. Marine* of Milwaukee.

*PER CURIAM.* Gerald F. Marine was graduated from the Marquette University Law School in June, 1959 and admitted to the bar. He practiced law in Washington County and held office as Family Court Commissioner of Washington County between 1961 and 1971. Upon leaving office as Family Court Commissioner, he specialized in domestic relations cases in the Milwaukee area.

The complaint in this proceeding alleges that Marine represented Dolores Radke, the complainant, in a divorce action; that he drafted a stipulation by which $5,000 of the funds paid by Mr. Radke to the complainant on the property settlement would be placed in Marine's trust account; that he transferred $2,500 from that

account to his personal account for the purported purpose of paying the balance of his fee for representing the complainant in the divorce; that this transfer took place in the absence of any agreement relating to Marine's fees; that he failed to return the money after the complainant protested; and that the excessive amount of the fee and the manner in which it was collected constituted violations of the Code of Professional Responsibility.

The defendant answered denying that there was any impropriety in the manner that fees were taken and further alleged that the total fee of $5,000 was neither improper nor excessive.

A hearing on these issues was held on May 24, 1977. On May 25th, the Board of State Bar Commissioners brought a motion to amend the complaint to allege a violation of sec. 256.293(2), Stats., based on evidence—Marine's failure to produce trust account records relating to the divorce proceedings—adduced at trial. This motion was granted by the referee.

*Conflict of Interest Question*

The first issue considered by the referee was the question of whether a violation of Disciplinary Rule 5–101(A) of the Code of Professional Responsibility had been committed. This section provides:

"(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."

The Board of Commissioners did not, however, separately charge Marine with a violation of this rule. This court has held that only the client, and not third persons, has standing to complain of an attorney's representation while adversely interested. *Forecki v. Kohl-*

*berg,* 237 Wis. 67, 295 N.W. 7, 296 N.W. 619 (1941). The referee concluded that the evidence demonstrated a violation of the disciplinary rule relating to conflicting interests which, not subject to independent sanction itself, could, nevertheless, figure into the existence of other rule violations, *i.e.,* charging excessive fees.

However, on the basis of this record, we hold that it is neither desirable nor necessary that we address the propriety of the referee's conclusion.

*Excessive Fee Question*

This charge arose from the fact that Marine ultimately acquired $5,000 for representing the complainant during the divorce proceedings. Marine received fees as follows: $500 from Donald Radke, the complainant's former husband, at the initial conference in September, 1974 where both parties and their attorneys were present; $500 from the complainant in January, 1975, which was paid under protest; $1,000 from Donald Radke on February 4, 1975, at the time of the divorce hearing before the court; and $2,500 appropriated from trust funds on February 28, 1975, paid by Donald Radke to the complainant pursuant to a stipulation adopted in the divorce judgment. During the entire period in question, no fee arrangement had been made by Marine and the complainant when the final $2,500 was appropriated by Marine from the trust account.

The question of whether the fees in this case were excessive is governed by DR2–106 of the Code, which provides in pertinent part:

"(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

"(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in

excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

"(3) The fee customarily charged in the locality for similar legal services.

"(4) The amount involved and the results obtained.

"(5) The time limitations imposed by the client or by the circumstances.

"(6) The nature and length of the professional relationship with the client.

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8) Whether the fee is fixed or contingent."

Generally, in disputes involving the reasonableness of attorney's fees, the burden of proof is upon the attorney to prove their reasonableness. *Herro, McAndrews & Porter v. Gerhardt,* 62 Wis.2d 179, 185, 214 N.W.2d 401 (1974); *State v. MacIntyre,* 238 Wis. 406, 416, 298 N.W. 200 (1941).

Both the parties at the hearing, and the referee in his opinion, concentrated on the number of hours which Marine claimed he spent on the Radke divorce. The complainant, who kept records of the time she spent with Marine, testified that she spent 16.5 hours with Marine before the court hearing on February 4, 1975. This corroborated Marine's testimony that he spent between 15 and 18 hours with the complainant during this time. Marine, however, claims he spent a total of between 55 and 70 hours on the case.

The problem of establishing the veracity of the total number of hours claimed by Marine was his failure

to produce time records. Marine testified that such records had been kept during his handling of the case, but that they were unavailable at the hearing. Consequently, Marine could only testify as to his recollection of the time spent on each of the items noted on an itemized statement sent to the complainant. Based upon his testimony, the total amount of time spent on the case was between 57.5 and 61.5 hours. The referee, viewing the testimony of both Marine and the complainant, concluded that he had established 54 hours spent on the case.

Marine also testified that he had charged between $50 and $60 an hour for his work on the only other case for which his fee was based on an hourly rate. Jerome Finn, who was allowed to testify as an expert witness, stated that the customary hourly rate for divorce work by lawyers during this time was between $40 and $50 an hour. From this, the referee concluded that $60 per hour was the maximum reasonable hourly rate for the handling of a divorce case of this type in 1974 and 1975.

The product of this maximum reasonable hourly rate times the number of proved hours spent on the case is $3,240, $1,760 less than the amount charged by Marine. But the amount which would have been charged if the hourly rate had been the $40 to $50 stated by Finn is $2,160 to $2,700.

The referee concluded that the difference between the fee charged here and the reasonable fee supported by the record is so great that "a lawyer of ordinary prudence" would be left with a "definite and firm conviction" that the fee was excessive. After a careful review of the record and transcript made in these proceedings we agree with the referee's finding that the fee was excessive.

*Appropriations from Trust Account Funds*

The use of client trust accounts is governed by DR9–102(A) of the Code, which provides as follows:

"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved."

A misappropriation of trust funds was charged by the Commission, and from the facts of this case, a violation of this rule occurred.

Here, at no time was there an expressed contract or agreement concerning attorney's fees between Marine and the complainant. Marine testified that this was unlike his usual practice in divorce cases, but his only explanation for the failure to arrive at an agreement on this matter was that he did not know how difficult the case would be when he accepted the complainant's retainer.

Marine argues that DR–9102(A)(2) must be strictly construed in favor of the attorney and that, so construed, he did not appropriate the trust funds until they were "due." The referee rejected this argument in part on the language contained in this court's opinion in *Charboneau v. Orton,* 43 Wis. 96 (1877). There, this court said: "The parties disagreed as to the defendant's

charges, and in such a case it is the duty of the attorney to pay to his client the sum which he admits his client is entitled to receive, leaving the balance to be adjusted in some appropriate proceeding." *Charboneau v. Orton, supra* at 102.

The same principle applies here. DR9–102(A)(2) permits an attorney to withdraw funds from a trust account "when due *unless the right of the lawyer . . . to receive it is disputed by the client. . . ."* (emphasis supplied). Thus, although an attorney may have a right to be paid a reasonable fee for his services even when an express contract relating to fees has not been reached (7 Am. Jur.2d *Attorneys at Law,* sec. 203 (1963), to permit an attorney to unilaterally withdraw funds from a client's trust account, agreement must be reached between the attorney and the client on at least three points: (1) the right of the attorney to look to the client for the payment of these fees; (2) the amount to which the attorney is entitled; and (3) the time at which payment will be expected. Absent an agreement as to these matters, it is difficult to see how any reasonably prudent attorney could assume that part of his client's trust funds could legally be withdrawn, because the requirement that they be withdrawn only in the absence of a dispute clearly assumes that the client has at least been advised as to these matters.

Here, there was no such understanding; indeed, the evidence indicates that Marine should have anticipated that the complainant would dispute his conduct. Dolores Radke steadfastly testified that under the circumstances of this case, she assumed that her former husband would be the sole source of Marine's compensation. Moreover, when the complainant did contribute $500 to Marine's fees, the payment was made under protest.

Therefore, considering the fiduciary nature of the relationship between attorney and client and the total failure of the attorney in this case to clarify his anticipation of remuneration from the client, we conclude that Marine withdrew funds from the Dolores Radke trust account in violation of DR9–102(A) (2).

## *Failure to Keep Trust Account Records*

The defendant was subpoenaed to produce all records of his trust account pertaining to the Radke divorce matter, including cancelled checks. He did not do so, explaining that pursuant to his usual practice, he destroyed them at the end of the calendar year 1975. This action was in direct violation of the mandate contained in sec. 256.293, Stats., adopted as a rule of this court in 48 Wis.2d vii, xvi (1972). Failure to produce such records is, by the very terms of the court rule, unprofessional conduct and grounds for disciplinary action.

From a review of the record and transcript made in these proceedings, we find:

1. That Gerald F. Marine, in the Dolores Radke divorce case, did charge an excessive attorney's fees in violation of DR2–106(A).

2. That Gerald F. Marine did withdraw funds from the Dolores Radke trust account in violation of DR9–102(A) (2) ; and

3. That Gerald F. Marine did destroy the records of the Dolores Radke trust account in violation of sec. 256.293, Wis. Stats.

We conclude that the defendant Gerald F. Marine is guilty of violating the rules of the Code of Professional Responsibility and that these violations warrant the suspension of the defendant's license.

Therefore, it is ordered and adjudged that the license of defendant Gerald F. Marine be and is hereby sus-

pended for a period of six (6) months, and that the restoration of his license and reinstatement as a member of the State Bar of Wisconsin be conditioned upon a refund of the sum of $2,500 to Dolores A. Radke with interest at the legal rate after February 28, 1975.

It is further ordered that the State Bar of Wisconsin notify the courts of record of this order by sending each copies thereof.

It is further ordered that Gerald F. Marine notify his clients now represented by him in all matters involving the practice of law or all matters pending in any court of this state that his license to practice law in this state is now suspended.

ABRAHAMSON and CALLOW, JJ., took no part.