STANDARD THEATRES, INC.,
Plaintiff-Respondent-Petitioner,

V.

State of Wisconsin, DEPARTMENT OF TRANSPORTATION,
Division of Highways, Defendant-Appellant.†

Supreme Court

*No. 82–1387. Argued February 1, 1984.—Decided May 30, 1984.*

(Also reported in 349 N.W.2d 661.)

† Motion for reconsideration pending. This motion was not de-
cided at the time the volume went to press. Its disposition will be
reported in a later volume.

For the plaintiff-respondent-petitioner there were briefs by *Eugene C. Daly, David A. Baker* and *Foley & Lardner,* Milwaukee, and oral argument by *Marvin Klitsner.*

For the defendant-appellant the cause was argued by *Donald W. Smith,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

LOUIS J. CECI, J.   Petitioner, Standard Theatres, Inc. (Standard), appeals from a published decision of the court of appeals[1] which reversed and remanded the circuit court's award of attorney fees under sec. 32.28, Stats. The circuit court for Vilas county, Timothy L. Vocke, Circuit Judge, awarded Standard $29,410 in attorney fees arising from a condemnation proceeding under ch. 32, and the court of appeals reduced this award to $7,600. Because we conclude that the circuit court properly awarded attorney fees under the statute, we reverse the court of appeals.

Standard owned a parcel of real estate in Vilas county, Wisconsin, on which a summer residence for the out-of-state theatre owner was located. The respondent, State of Wisconsin, condemned a portion of the land, pursuant to ch. 32, Stats., for the purpose of widening and relocating Highway 70, which would in effect move the highway nearer to Standard's residence. The state offered to pay

---

[1] *Standard Theatres, Inc. v. Dept. of Trans.,* 113 Wis. 2d 103, 334 N.W.2d 281 (Ct. App. 1983).

$36,000 for the property and other damages sustained by Standard, pursuant to sec. 32.05(3). Because Standard felt that the compensation offered by the state was inadequate, it applied to the Vilas county circuit court judge for assignment to the commission of county condemnation, as provided by sec. 32.05(9), in September of 1978.

Standard's attorney participated in a hearing before the condemnation commission on November 29, 1978. *See,* sec. 32.08(6), Stats. The county commission increased the award to $55,000. The state then initiated an appeal of the commission's award to the Vilas county circuit court, as provided in sec. 32.05(10), on January 8, 1979.

A trial was scheduled for August 13, 1979, and a pretrial date was set for July 20, 1979. On July 2, however, Standard's attorney notified the court of the death of Standard's appraiser, who had died in May of that year. The attorney also advised the court that he was having difficulties finding an appraiser who would be able to testify at the August trial date. As a result, Standard's counsel requested postponing both the pretrial conference and trial date. On July 20, 1979, the state stipulated to such a postponement, to "be adjourned until approximately November, 1979, the exact date to be set by the Court." In a letter from Standard's counsel which was attached to the stipulation, the attorney stated that as soon as he had received a new appraiser's report, he would forward a copy to the state.

Standard's attorney apparently never forwarded a copy of a new appraiser's report to the state. Also, neither side asked the court to set a new trial or pretrial date. However, on July 28, 1980, the clerk of courts issued a notice entitled, "Failure to Prosecute or Comply with Procedure Statutes," and mailed such notice to both par-

ties.[2]  The notice provided that unless within twenty days

[2] The notice reads as follows:

"STATE OF WISCONSIN          CIRCUIT COURT          VILAS COUNTY

### FAILURE TO PROSECUTE OR COMPLY WITH PROCEDURE STATUTES

#### PURSUANT TO RULE 805.03 WISCONSIN PRACTICE
(Rules of Civil Procedure)

Dear Sir:

Your attention is directed to Rule 805.03 Wisconsin Practice, Rule of Civil Procedure, regarding dismissal of dormant actions. If the ground for dismissal is want of prosecution, the court has inherent power to act on its own motion.

THERE is on file the following action in Circuit Court, Vilas County, Wisconsin.

STANDARD THEATRES, INC.
_____
Plaintiff (s)

-VS-                          Case No.  78CV44

STATE OF WISCONSIN,
DEPARTMENT OF TRANSPORTATION,  Defendant (s)
DIVISION OF HIGHWAYS

Attorney(s) for Plaintiff(s):  Eugene C. Daly

Attorney(s) for Defendant(s)  Donald Smith

Counsel and/or parties are hereby notified the above action will be dismissed under the provisions of Rule 805.03 Wisconsin Practice, Rules of Civil Procedure, unless within twenty (20) days from date hereof good cause is shown for further delay. This must be done to clear the court files of pending, dormant actions.

If this matter has been settled, please forward the necessary papers to dispose of this case.

Dated this    28th    day of    July    , 19  80

Notice mailed to:                              By order of the Court:
  Eugene C. Daly

  Donald Smith                                   Ruth Wolfe Ellis
_____                    Ruth Wolfe Ellis
                                                 Clerk of Courts
_____
                                              By: Roberta Jeske
                                                  Deputy

### ORDER DISMISSING ACTION

No party having shown to the Court good cause why the above entitled matter should not be dismissed, and more than twenty (20) days having expired since the date of the foregoing Notice;

Now therefore, IT IS ORDERED, the above entitled action be and the same is hereby dismissed pursuant to Rule 805.03 Wisconsin Practice, Rules of Civil Procedure.

Dated this    25    day of  August  , 19 80

**FILED**

AUG 25 1980

CLERK CIRCUIT COURT
VILAS COUNTY, WISC
Job—5–224"

BY THE COURT

_____
Judge

good cause was shown for further delay, the action would be dismissed, pursuant to sec. (Rule) 805.03, Stats.[3] The state responded with an offer to Standard to settle the case for an additional $2,500 over the original $36,000, but the state apparently never notified the trial court of this offer.[4] Standard also did not respond to the notice of the pending dismissal, obviously because it would have been satisfied with the dismissal of the state's appeal. Accordingly, on August 25, 1980, the circuit court dismissed the case on the court's own motion.

On March 19, 1981, the state requested a conformed copy of the court's order of dismissal. On May 14, 1981,

---

[3] Section 805.03, Stats., provides:

"805.03 **Failure to prosecute or comply with procedure statutes.** For failure of any claimant to prosecute or for failure of any party to comply with the statutes governing procedure in civil actions or to obey any order of court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to order authorized under s. 804.12(2)(a). Any dismissal under this section operates as an adjudication on the merits unless the court in its order for dismissal otherwise specifies for good cause shown recited in the order. A dismissal on the merits may be set aside by the court on the grounds specified in and in accordance with s. 806.07. A dismissal not on the merits may be set aside by the court for good cause shown and within a reasonable time."

*See also, Latham v. Casey & King Corp.,* 23 Wis. 2d 311, 314, 127 N.W.2d 225 (1964), where this court stated, "It is considered well established that a court has the inherent power to resort to a dismissal of an action in the interest of orderly administration of justice. The general control of the judicial business before it is essential to the court if it is to function."

[4] The letter provided, in pertinent part, the following offer: "I have recently contacted the District and Central Offices of the Department of Transportation, Division of Highways, in an attempt to obtain authority to dispose of this matter short of continuing litigation. . . . I would recommend to the District that the original award of $36,000 be allowed to stand and to that the state would add an additional $2,500 to cover costs and disbursements."

the state filed a notice of motion and motion for order vacating the trial court's dismissal of the case on August 25, 1980. The state alleged in its affidavit in support of the motion that it had been the only party who had made any attempt to move the case to its resolution by its settlement offer to Standard and that "the state should [not] be penalized for a sincere effort to accommodate plaintiff following the death of his witness."

The motion was heard by the circuit court on October 19, 1981, and Standard's attorney was present to contest the state's motion. The motion to vacate the August 25 dismissal was denied. The state then appealed to the court of appeals on December 14, 1981, and Standard subsequently moved for summary affirmance of the circuit court's denial of the state's motion to vacate. On March 31, 1982, the court of appeals granted the motion for summary affirmance in an unpublished decision. The court of appeals found that the state had not shown good cause for its delay in bringing the motion to vacate the circuit court's order dismissing the case. *See,* sec. 806.07 (2), Stats.; *Rhodes v. Terry,* 91 Wis. 2d 165, 280 N.W.2d 248 (1979). The court reached this conclusion based upon the observation that when the state received notice that the action would be dismissed in twenty days for failure to prosecute, it took no further action until it requested a copy of the dismissal order on March 19, 1981, and subsequently moved to vacate on May 14, 1981.

On February 1, 1982, Standard's attorney had filed a motion in the circuit court for an award of litigation expenses pursuant to sec. 32.28, Stats.[5] After the court of

[5] Section 32.28, Stats., provides as follows:

"**32.28 Costs.** (1) In this section, 'litigation expenses' means the sum of the costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees necessary to prepare for or participate in actual or anticipated proceedings before the condemnation commissioners, board of assessment or any court

appeals decision was issued, the motion was argued before the circuit court judge via a three-way telephone

under this chapter or chapter 275, laws of 1931, as amended (Kline Law).

"(2) Except as provided in sub. (3), costs shall be allowed under ch. 814 in any action brought under this chapter or chapter 275, laws of 1931, as amended (Kline Law). If the amount of just compensation found by the court or commissioners of condemnation exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer, the condemnee shall be deemed the successful party under s. 814.02(2).

"(3) In lieu of costs under ch. 814, the court shall award litigation expenses to the condemnee if:

"(a) The proceeding is abandoned by the condemnor;

"(b) The court determines that the condemnor does not have the right to condemn part or all of the property described in the jurisdictional offer or there is no necessity for its taking;

"(c) The judgment is for the plaintiff in an action under s. 32.10;

"(d) The award of the condemnation commission under s. 3205 (9) or 32.06(8) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15% and neither party appeals the award to the circuit court;

"(e) The jury verdict as approved by the court under s. 32.05 (11) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15%;

"(f) The condemnee appeals an award of the condemnation commission which exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15%, if the jury verdict as approved by the court under s. 32.05(10) or 32.06(10) exceeds the award of the condemnation commission by at least $700 and at least 15%;

"(g) The condemnor appeals the award of the condemnation commission, if the jury verdict as approved by the court under s. 32.05(10) or 32.06(10) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15%;

"(h) The condemnee appeals an award of the condemnation commission which does not exceed the jurisdictional offer or the highest written offer prior to the jurisdictional offer by 15%, if the jury verdict as approved by the court under s. 32.05(10) or 32.06(10) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15%; or

conference on May 18, 1982. During that conference, the court ordered the state to reimburse Standard for its appraisal fees and other miscellaneous disbursements, but reserved deciding the award of attorney fees. The court asked Standard's attorney for affidavits of fees from similarly qualified attorneys practicing in the Milwaukee county area.

After receiving affidavits from Standard's attorney and letters from the state concerning similarly qualified attorneys, the circuit judge issued an order on July 8, 1982, followed by a July 16 judgment. The circuit judge awarded Standard $29,410.00 for attorney fees and $3,608.87 for other litigation expenses.

The state filed an appeal of the circuit court's award of attorney fees with the court of appeals on October 5, 1982. On April 26, 1983, the court issued an opinion in *Standard Theatres, Inc. v. Dept. of Trans.*, 113 Wis. 2d 103. The court of appeals reduced the award of attorney fees to $7,600 and remanded the case to the circuit court with directions to enter judgment for this amount. Standard then petitioned this court for review, and we granted the petition.

The issue before us is whether the attorney fees awarded Standard by the circuit court were reasonable and necessary under sec. 32.28, Stats. However, to resolve this issue, we find that there are two underlying issues which must be resolved. They are: (1) Was Standard's *choice* of an attorney reasonable under sec. 32.28, and (2) were the fees charged by Standard's attorney reasonable and necessary under the statute?

"(i) The condemnee appeals an assessment of damages and benefits under section 10(2) of chapter 275, laws of 1931, as amended (Kline Law), if the verdict of the jury awards an amount at least $700 and at least 15% greater than the award made by the city."

## I.

## WAS STANDARD'S CHOICE OF AN ATTORNEY REASONABLE UNDER SEC. 32.28, STATS.?

Section 32.28(1), Stats., provides:

"In this section, 'litigation expenses' means the sum of the costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees necessary to prepare for or participate in actual or anticipated proceedings before the condemnation commissioners, board of assessment or any court under this chapter or chapter 275, laws of 1931, as amended (Kline Law)."

Section 32.28(3), Stats., provides in part:

"In lieu of costs under ch. 814, *the court shall award* litigation expenses to the condemnee if:
". . .
"(d) The award of the condemnation commission under s. 32.05(9) or 32.06(8) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15% and neither party appeals the award to the circuit court;
". . .
"(g) The condemnor appeals the award of the condemnation commission, if the jury verdict as approved by the court under s. 32.05(10) or 32.06(10) exceeds the jurisdictional offer or the highest written offer prior to the jurisdictional offer by at least $700 and at least 15%;
". . ." (Emphasis added.)

We observe that in the instant case, although the state appealed the award of the condemnation commission, the case did not ever proceed to trial. Therefore, there never was a jury verdict to be approved by the court. In essence, then, the instant case is identical on the one hand to one where neither party appeals the commission's award. However, no matter which subsection of the stat-

ute is applied, the formula utilized to determine when attorney fees shall be awarded is the same: When the subsequent award exceeds the jurisdictional offer or highest written offer by at least $700 and at least 15%.

Initially, we note that the statute provides that attorney fees "shall" be awarded by the court when the formula contained in the statute is met. The use of the term "shall" denotes that attorney fee awards are mandatory. *First Wisconsin Nat. Bank v. Nicolaou,* 113 Wis. 2d 524, 536, 335 N.W.2d 390 (1983), citing *In Matter of E.B.,* 111 Wis. 2d 175, 185, 330 N.W.2d 584 (1983).

This court has dealt with the question of what constitutes reasonable attorney fees in numerous past decisions. However, this appears to be the first instance where the client's choice of an attorney has been challenged as being unreasonable. Standard argues that the terms "reasonable" and "necessary," as utilized in sec. 32.28(1), Stats., refer to a reasonable choice by the client of an attorney to represent that client's interest in the condemnation proceeding. In the case at hand, Standard retained Attorney Eugene Daly of Milwaukee.

The state, on the other hand, argues that reasonable refers to the rates of attorneys practicing in the community where the condemned property is located. Essentially, the thrust of the state's argument is that the condemnee may only be compensated for what legal fees the condemnee would have incurred had counsel in the Vilas county area been retained. Therefore, according to the state, Standard's choice of an attorney was unreasonable and unnecessary, since the attorney was not from the community where the property was situated. In particular, the state challenges the traveling time billed by Attorney Daly and the excess of the hourly fee charge over that charged by attorneys in Vilas county.

The dispute in this case, then, centers around the use of the words "reasonable and necessary attorney fees" in

sec. 32.28, Stats. As this court has acknowledged, the threshold question to be addressed by this court when construing a statute is whether the statutory term is ambiguous. *State v. Engler,* 80 Wis. 2d 402, 406, 259 N.W.2d 97 (1977). A statutory term is ambiguous if reasonable persons could disagree as to its meaning. *Kollasch v. Adamany,* 104 Wis. 2d 552, 561, 313 N.W.2d 47 (1981). However, this court has also recognized that whenever a case such as this reaches the court, parties obviously disagree as to a statute's meaning. Therefore, the court must look to the language of the statute itself to determine whether well-informed persons should have become confused. *Aero Auto Parts, Inc. v. Dept. of Transp.,* 78 Wis. 2d 235, 238–39, 253 N.W.2d 896 (1977).

When this court looks to the language of sec. 32.28, Stats., the statute must be interpreted on the basis of the plain meaning of its terms. *State v. Derenne,* 102 Wis. 2d 38, 45, 306 N.W.2d 12 (1981). If the meaning of the language utilized is clear and unambiguous on its face, then it is improper to turn to extrinsic aids to determine the meaning intended. *Id. See also, State v. Tollefson,* 85 Wis. 2d 162, 167, 270 N.W.2d 201 (1978). Also, the intent of a section of a statute must be derived from the act as a whole. *Id.*

When we look to the plain meaning of sec. 32.28, Stats., it provides that litigation expenses, including reasonable attorney fees necessary to prepare for or participate in actual or anticipated proceedings, shall be awarded by the court in given situations. There is absolutely no language in the statute referring to the limits of what is a reasonable or necessary fee, such as the restriction the state has urged concerning the locality of the condemned property. Also, when we direct our attention to the situations governing when such an award is proper, we find that these expenses are mandated by the following formula: When the jury verdict, or condemnation commission

award, exceeds the jurisdictional offer by at least $700 and at least 15 percent.[6]

We believe that what the legislature intended by the use of the words "reasonable and necessary attorney fees" is obvious when this formula is considered. The formula indicates that the legislature meant to discourage the condemnor from making inequitably low jurisdictional offers. The lowest allowable limit set by the legislature upon these offers is $700 and 15 percent below the final award. Should the condemnor exceed this limit and offer an amount which ultimately turns out to be at least $700 and 15 percent below the final award, the condemnor is forced to indemnify the condemnee for the attorney fees incurred by an appeal. This is the obvious intent behind the formula set up by the legislature. The only language referring to the fees themselves is that they must be reasonable and necessary. There is absolutely no restriction in the statute implying that reasonable refers to the area from which counsel must be retained. Therefore, we find that the language clearly and unambiguously indicates an intention to award fees based upon the condemnor's action in making an offer. We do not find that reasonable persons may disagree as to the meaning of reasonable and necessary attorney fees. We also do not find any inference in the statutory language which implies that retaining only counsel from the community where the condemned property is located may be deemed reasonable and necessary.

When we focus upon the facts of this case, we note that the state originally offered Standard $36,000 for the condemned property. The commission awarded Standard $55,000. This is an increase of *$19,000* and *53 percent* over the state's offer. There is absolutely no question in the court's mind that this increase is one for which the

---

[6] *Acquisition of Certain Lands by Benson*, 101 Wis. 2d 691, 305 N.W.2d 184 (Ct. App. 1981). The difference between the award and the offer must meet both tests, but the two are not cumulative.

statute mandates an award of attorney fees. It is exactly this type of inequitable jurisdictional offer which the legislature intended to discourage when it drafted sec. 32.28, Stats.

The trial court also found no indication in the statutory language that the terms "necessary" and "reasonable" referred to the fact that counsel must be retained from the community in which the condemned property is located. The court of appeals, however, agreed with the state that the statutory terms did imply that such local counsel must be retained if the condemnee expected to be fully compensated for its legal fees arising from an appeal. The court noted that, "Standard has not shown that competent local counsel was unavailable." 113 Wis. 2d at 106.

We reject the court of appeals' analysis.[7] Initially, we note that this court has recognized that the rule of strict construction should be applied to the condemnor's power and to the exercise of this power. *Aero Auto Parts,* 78 Wis. 2d at 241. This is because the exercise of the power of eminent domain has been characterized as an "extraor-

---

[7] The court of appeals also determined that Standard could have obtained reasonable representation for a contingent fee of forty per cent of the increase in the commission award over the jurisdictional offer, apparently based upon the fee arrangement utilized by the attorney in the decision of *Kluenker v. State,* 109 Wis. 2d 602, 327 N.W.2d 145 (Ct. App. 1982), which also involved sec. 32.28, Stats. While this sort of analysis may have been useful had the challenged fees in this case involved a contingency fee contract, we do not find it relevant when a fixed fee is involved. We also believe that this is consistent with SCR 20.06(6)(d), which provides that a lawyer should generally decline to accept employment on a contingency fee contract when the client is capable of paying a reasonable fixed fee. Also, this court has recognized that a contingent fee contract is only a guide, but not a control on the question of a reasonable fee. *Hutterli v. State Conservation Comm.,* 34 Wis. 2d 252, 258, 148 N.W.2d 849 (1967). If a contingency fee agreement serves as only a guide when one is utilized by the attorney, obviously such an arrangement should not be utilized to control reasonable fees where one does not exist at all.

dinary power," and the rule of strict construction is intended to benefit the owner whose property is taken against his or her will. Nichols, *Eminent Domain* sec. 3.213[3] and [4] (rev. 3d ed. 1981). Conversely, statutory provisions in favor of the owner, such as those which regulate the compensation to be paid to him or her, are to be afforded liberal construction. *Aero Auto Parts*, 78 Wis. 2d at 241.

Therefore, when we address the provision concerning the award of attorney fees, we find that construing reasonable attorney fees to imply that only compensation will be allowed for those attorneys charging rates equivalent to those charged by counsel in the area where the condemned property is located is contrary to the rule of liberal construction.

We also note that the court of appeals' analysis failed to take into account the particular facts of the case. The court stated that it did "not read sec. 32.28 to require the state to pay for Standard's decision to seek more expensive representation." 113 Wis. 2d at 105.

We agree with the court of appeals that sec. 32.28, Stats., should not be read to require the state to pay for Standard's decision to seek more expensive representation. However, Standard did not "seek" more expensive representation. Because of the facts of this case, we find Standard's choice of counsel to be reasonable. Standard is an out-of-state theatre owner with a summer residence located in Vilas county. When Standard learned that the property was to be taken by the state, it retained its counsel of thirty years to represent it in the condemnation proceeding. An attorney-client relationship of this duration involves mutual feelings of confidence and trust, and it is only natural that when a case such as this arises, the client first consults its counsel. Because Standard's attorney had experience in eminent domain proceedings in excess of twenty years, it is only natural that he chose

to handle Standard's case himself. We find it to be an unjust burden to force Standard to abandon its counsel of thirty years, in whom the client obviously has faith because of their long-standing relationship, in order to retain counsel in the area where the condemned property is located. We must also keep in mind that Standard voluntarily assumed the fees of Attorney Daly should it have been unsuccessful in its appeal to the commission. Therefore, we reject the court of appeals' interpretation that Standard must retain counsel from the area where the condemned land is located in order to be reimbursed for its attorney fees.

We find that our interpretation of the statutory terms concerning a reasonable and necessary choice of counsel, based upon the nature of the condemnation proceeding and the particular facts of the case, is consistent with the purpose behind ch. 32, Stats. This court has noted that a statutory subsection may not be considered in a vacuum, but must be considered in reference to statutes addressing the same subject matter. *Aero Auto Parts,* 78 Wis. 2d at 239. When we consider the policy behind ch. 32, which is to justly compensate the condemnee for any lands taken by the condemnor by the condemnor's exercise of the power of eminent domain, the position taken by the state is unreasonable. When the owner is deprived of property against his or her will, it is obvious that the owner is not justly compensated for his or her property if the owner must initially be forced to litigate in order to obtain the full value of the land, and then must pay for his or her attorney fees from this full value. The attorney fees incurred here were, after all, necessitated by the owner's attempt to get the fair value of the owner's real estate. Therefore, one must start from the premise that the owner is to be compensated for the attorney fees. In other words, the purpose behind the statute is to make the owner "whole," through compen-

sating the owner for the value of the property taken and for the attorney fees incurred in attempting to obtain this value.

This court has used a similar line of reasoning when considering the award of attorney fees under other statutes. For example, in the recent case of *Watkins v. LIRC,* 117 Wis. 2d 753, 345 N.W.2d 482 (1984), this court noted that reasonable attorney fees were proper under sec. 111.36(3)(b) of the Wisconsin Fair Employment Act. The court reasoned that under the purposes of the act, which include making victims of discrimination whole, and also include discouraging acts of discrimination, denying the victim attorney fees would circumvent the act.

"It would be contrary to the purposes of the Act if the person whose rights have been vindicated ends up in an economically worse position than when he or she started. In order to make [the individual] 'whole,' she must be able to recover reasonable attorney's fees." *Id.* at 764.

Although the Wisconsin Fair Employment Act contains purposes which are very distinct from ch. 32, sec. 32.28 addresses the condemnee's attempt to challenge the condemnor's jurisdictional offer. By analogy, then, the purpose of sec. 32.28 is to discourage low jurisdictional offers and to make the condemnee whole when the condemnee is forced to litigate in order to get the full value of the property. Similarly, the condemnee cannot be made whole, or be justly compensated, if the increased award must be applied toward attorney fees which were incurred because of the condemnor's actions. Accordingly, we hold that reasonable attorney fees does not mean that counsel must be retained from the locality where the condemned property is located. It implies a reasonable choice of counsel by the condemnee, based upon the particular facts of the case.

## II.

## WERE THE FEES CHARGED BY STANDARD'S ATTORNEY REASONABLE AND NECESSARY UNDER THE STATUTE?

The second part of our analysis concerns whether the fees charged by Attorney Daly were reasonable and necessary, based upon the proceedings involved. As we noted previously, this court has dealt with the question of what constitutes reasonable attorney fees in numerous past decisions. In *Herro, McAndrews & Porter v. Gerhardt,* 62 Wis. 2d 179, 184, 214 N.W.2d 401 (1974), this court recognized that a conflict exists as to the tests to be applied by the court in determining what constitutes reasonable attorney fees. The *Herro* decision recognized that this court had stated that since the question of what is a reasonable attorney fee is a finding of fact, it will be sustained upon appeal unless clearly unreasonable and against the great weight and clear preponderance of the evidence. *Id.* at 183, citing *Knoll v. Klatt,* 43 Wis. 2d 265, 271, 168 N.W.2d 555 (1969) ; *Estate of Marotz,* 263 Wis. 99, 103, 56 N.W.2d 856 (1953). However, in *Herro,* this court also acknowledged that past decisions had also stated that this court will exercise an independent review of the reasonableness of the attorney fees. *Id.,* citing *Touchett v. E Z Paintr Corp.,* 14 Wis. 2d 479, 488, 111 N.W.2d 419 (1961). *See also, Estate of Tierney,* 70 Wis. 2d 438, 443, 234 N.W.2d 357 (1975) ; *Giffen v. Tigerton Lumber Co.,* 26 Wis. 2d 327, 132 N.W.2d 572 (1965). The *Herro* court concluded that the proper test to be utilized was the "independent review" of the attorney fees. This was based upon this court's inherent supervisory power over the practice of law, which the *Herro* court reasoned would be more effectively exercised by independent review of fees. Accordingly, this court stated in the *Herro* decision that "this

court will independently review attorney's fees when challenged on appeal and any language to the contrary is withdrawn." *Herro, McAndrews & Porter v. Gerhardt,* 62 Wis. 2d at 184.

In *First Wisconsin Nat. Bank v. Nicolaou,* 113 Wis. 2d 524, this court modified the *Herro* test for determining what constitutes reasonable attorney fees. After acknowledging that the trial court's findings and award may be given weight on review, the *Nicolaou* opinion utilized the following language:

"As part of its inherent supervisory power over the practice of law, this court *may* independently review the reasonableness of an attorney fee award." *Id.* at 537 (citations omitted; emphasis added).

We believe that the trial court is in an advantageous position to make a determination as to the reasonableness of a firm's rates. This is because the trial court may be aware of the costs incurred by a firm in managing its legal practice, or is capable of asking to be made aware of them. As this court noted in *Tesch v. Tesch,* 63 Wis. 2d 320, 335, 217 N.W.2d 647 (1974).

"[The trial judge] has observed the quality of the services rendered and has access to the file in the case to see all of the work which has gone into the action from its inception. He has the expertise to evaluate the reasonableness of the fees with regard to the services rendered."

Accordingly, we hold that the proper standard upon review of attorney fees is that the trial court's determination of the value of these fees will be sustained unless there is an abuse of discretion.

Utilizing this standard, we note that the trial court in the instant case approved the fees submitted by Attorney Daly. We note that at the May 18 motion hearing, the court asked for affidavits from attorneys with

similar qualifications to Attorney Daly's, or affidavits from clients who had had similar work done and that they had been billed accordingly. The judge made specific reference to the "standard practice in Milwaukee County," and the state repeated the following language: "The State submit a similar statement as to reasonableness in Milwaukee?" Although the judge did not respond directly to the state's question, the question itself indicates that the state understood the court's order.

The burden of proof is upon the attorney submitting the fees to prove the reasonableness of a fee when it is questioned, *Disciplinary Proceedings Against Marine*, 82 Wis. 2d 602, 607, 264 N.W.2d 285 (1978), and we observe from the record that Attorney Daly submitted a specific breakdown of his charges for hours billed, as well as affidavits from similarly qualified Milwaukee attorneys. The state merely submitted *letters* from attorneys throughout the state and none from the Milwaukee county area. The judge noted in a letter of June 29, 1982, directing Mr. Daly to draft an order granting attorney fees, that the state had not utilized affidavits. Apparently, the judge did not place much weight on the letters submitted by the state, referring to *Nat. Ass'n of Concerned Vets. v. Sec. of Defense*, 675 F2d 1319 (DC Cir 1982).[8]

---

[8] The trial judge referred to the following discussion from the opinion: "[A]ffidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases provide prevailing community rate information. Recent fees awarded by the courts or through settlement to attorneys of comparable reputation and experience performing similar work are also useful guides in setting an appropriate rate." *Id.* at 1325 (footnote omitted). "In addition, counsel for applicants may be required to submit specific evidence of his or her actual billing practice during the relevant time period, if in fact applicant has a billing practice to report." *Id.* at 1326 (footnote omitted). "Casual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees. Attorneys

The trial judge also noted that attorney fees vary greatly throughout the state, from $30 to $200 per hour. However, the court also noted the following:

"The higher fees in Milwaukee are largely due to the amount of overhead. . . .

"Under the circumstances I find that considering Mr. Daly's qualifications, the amount of work that he did in this case and the going rate for this type of work as charged by the Bar in the City of Milwaukee, the fees that are requested by Standard Theatres, Inc. are reasonable and necessary and shall be paid."

We believe that the trial court's finding as to the reasonableness of Attorney Daly's fees is supported by the facts of this case. The factors set forth in SCR 20.12(2) also support the circuit court's finding.[9] It

who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Id.* at 1327.

[9] SCR 20.12 provides, in pertinent part, as follows:

"**Fees for legal services.** (1) A lawyer may not enter into an agreement for charge or collect an illegal or clearly excessive fee.

"(2) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

"(a) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.

"(b) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

"(c) The fee customarily charged in the locality for similar legal services.

"(d) The amount involved and the results obtained.

"(e) The time limitations imposed by the client or by the circumstances.

"(f) The nature and length of the professional relationship with the client.

should be kept in mind that Attorney Daly has handled eminent domain cases for 24 years and has represented Standard for 30 years.

The state has particularly challenged the total amount of time billed by Attorney Daly and allowed by the trial court as reasonable and necessary fees, namely, 213 hours. The state argues that the total amount of court time spent by Attorney Daly amounts to only one full working day.

What the state has failed to take into account, however, is that the plain language of sec. 32.28, Stats., provides for fees incurred in *preparation* for anticipated proceedings before the commission or court. This proceeding began six years ago. It was logical for the trial court to conclude that Attorney Daly anticipated that the matter would go to trial and, thus, acting as a responsible attorney, prepared for this event. Also, we note that the greater percentage of fees was incurred because of the *state's* repeated, unsuccessful efforts to reduce the commission's award.[10] The state is the party

---

"(g) The experience, reputation and ability of the lawyer or lawyers performing the services.

"(h) Whether the fee is fixed or contingent."

[10] It appears that Standard only incurred 79.2 hours of work totaling $8,625, through the time of the commissioners' award of $55,000. Daly's affidavit indicates that *54.25* further hours were incurred through preparation for trial before the trial court, totaling $6,265, including conferences with the appraiser, etc. *54.9* hours, billed at $8,235, were incurred through Daly's attempt to contest the state's motion to vacate, through research, preparation, and participation. Finally, an additional *104.5* hours, or $14,520, were incurred because of the state's appeal of the trial court's denial of the motion to vacate. Ultimately, only 79.2 hours were necessary to proceed to the point of the commission's award. An additional 253.65 hours were incurred because of the state's appeal, which the trial court approved in the amount of 213 hours. In any event, if we utilize the 213-hour figure accepted by the trial court, that is approximately 2.7 times the hours necessary to take the matter through the commission, because of the state's efforts to reduce the commission's award.

which appealed the commission's award. Also, the state failed to respond to the court's notice of a pending dismissal for lack of prosecution, and, after the trial court had dismissed the case, the state did not attempt to reopen the matter until almost nine months later. Therefore, the state is directly responsible for those additional fees incurred by Standard.

When we accord the trial court the proper deference, we find that although the actual time spent in court by Attorney Daly may have been minimal, the *preparatory time* over the course of the six years spanning this proceeding was substantial. Also, the hours spent by Daly were "necessary" in that they were spent attempting to maintain his client's $55,000 award from the commission and to block the state's repeated attempts to undermine this award.

Also, because of the state's actions throughout this entire scenario, we feel that the state is in an especially poor position to dispute the reasonableness of the fees by arguing that the time spent by Standard's attorney was not necessary. The state has repeatedly referred to the "inactivity" of Attorney Daly, following his request for the adjournment of the trial date. However, the state is the party that initiated the appeal; therefore, it is the state's responsibility to be certain that the case is prosecuted.

Further, we note that the state offered to settle the case with Standard for $2,500 over its initial offer of $36,000, or for $38,500, after Standard had obtained an award of $55,000 from the commission. We do not find that this offer indicated a good-faith effort on the part of the state to resolve this dispute in light of the substantial increase made by the commission over the state's initial offer. Also, we observe that the state's effort to challenge the reasonableness and necessity of Attorney Daly's fees was in the form of letters from throughout the state. None of these letters were from Milwaukee

attorneys. We observe that this is a violation of a court order, *as the state understood the court's directions.* Also, we note that several of the letters address the question of what amount of time and fees is involved in preparation for and participation in a hearing before the commission. They do not even address the question of fees and time involved in a protracted appeal following the commission hearing or the totality of efforts involved in this six-year proceeding. This again does not indicate a good-faith effort on the part of the state in attempting to put forth to the trial court what would constitute reasonable and necessary fees.

In summary, then, we hold that under the facts of this case, the language of sec. 32.28, Stats., concerning reasonable and necessary attorney fees does not mean that a condemnee must retain counsel from the locality where the condemned property is located in order to receive full compensation of attorney fees. We also hold that the trial judge did not abuse his discretion in determining that the attorney fees of $29,410 constituted reasonable attorney fees, and the finding of the trial court will be sustained.

*By the Court.*—The decision of the court of appeals is reversed; the judgment of the circuit court is affirmed.

WILLIAM A. BABLITCH, J. (dissenting). A unanimous court of appeals held that the attorney's fee of $29,410 which the trial court awarded to Standard was not reasonable. Based on its independent review, the court of appeals determined that a reasonable attorney's fee in this case was $7,600. However, the majority of this court reinstates the full award under a statute that requires the state to pay "reasonable attorney fees" to a prevailing party in a condemnation action. The majority approves as "reasonable" an hourly fee of up

to $150 per hour[1] thereby approving a total attorney's fee of $29,410 (which includes a sizable amount for travel time[2]) that must be paid by the state. This is allowed despite evidence in the record that various attorneys outside the locality where Standard's attorney in this case normally practices (which is not the locality where this condemnation action was brought) indicated that their normal fees for this type of litigation would be based on an hourly rate of approximately $60 to $75, depending on the attorney's experience and the complexity of the litigation.

The issue in this case is not whether the fees charged by Mr. Daly (Standard's attorney) are reasonable with

[1] The fees charged by Standard's attorney were based on hourly rates of $100 to $110 per hour for 1978; $110 to $120 per hour for 1979; $130 to $135 per hour for 1980; and $150 per hour for 1981 and 1982.

[2] Travel time between Milwaukee and Vilas county was apparently charged at the full hourly rate. The record reveals at least three conferences for which travel time was billed and approved by the majority of this court. At a two hour hearing held in October, 1981, Mr. Daly's billing reads as follows: "10/19, 20, 1981,—Appearance in Vilas County Circuit Court and travel; return trip and telephone conference J. Ling; 14.0 hours, $2100."

The billing for November 27, 28 and 29, 1978, reads: "11/27, 28 and 29/78—Telephone conference D. Hankins; preparation for hearing; conferences D. Hankins and R. Bourguignon at Eagle River in preparation for hearing; conference with J. Ling in preparation for hearing; attendance at hearing before County Condemnation Commissioners; 16.0 hours, $1760".

The billing for October 10, 1979 states: "10/10/79—Conference with appraiser in Eagle River and Rhinelander; 10.0 hours, $1200".

The record also reveals charges of $990 for 9 hours for an "Attendance at pretrial conference" on April 13, 1979. Although the record does not indicate the location of this conference, based on the amount charged it is possible that this charge also included an amount for travel time.

The majority opinion approves these billings, which total $6050, in full.

respect to the fees normally charged by him or his firm, or to fees charged for similar services by other firms in the locality where Mr. Daly normally practices (Milwaukee). Unquestionably the cost of practicing law differs from locality to locality, and even from law firm to law firm within the same locality. The issue does not concern the quality of services that Mr. Daly rendered. Rather, the issue is whether the fees charged by Mr. Daly, which are based on hourly rates of between $100 and $150, are "reasonable" and therefore fully reimbursable, within the meaning of sec. 32.28(1), Stats., which entitles a condemnee, under certain circumstances, to recover reasonable attorney fees ". . . necessary to prepare for or participate in actual or anticipated proceedings. . . ."

The majority opinion fully addresses the issue of whether the fees requested by Mr. Daly were necessary for the preparation and participation in ". . . actual or anticipated proceedings . . .", and I concur with the majority's conclusion that the hours Mr. Daly spent in the preparation and participation in the proceedings were necessary. Travel time was also necessary, but I do not address the question whether the majority's awarding the full hourly rate for the travel time is appropriate. *See* dissenting op. at n. 2.

However, based on the record before this court, and the legislative intent as clearly reflected in the words of the statute, I disagree with the majority's conclusion and rationale that the fees awarded to Standard were "reasonable" within the meaning of sec. 32.28(1), Stats. I would therefore remand to the trial court for further proceedings.

Assume for purposes of analysis that a state employee takes a necessary business trip for which he or she will seek reimbursement for the travel expenses incurred. Under sec. 20.916(1), Stats., state officers and employees ". . . shall be reimbursed for actual, *reasonable*

and necessary traveling expenses incurred in the discharge of their duties in accoradnce with s. 16.535. . . ." (Emphasis added.) Section 16.535(1)(b) defines "reasonable" as ". . . not extreme or excessive." Assume further that the employee flies first class even though other classes are available, eats only the most expensive meals, and stays at only the most expensive hotels. The employee then requests reimbursement from the state for the full costs of the flight, meals, and accommodations. Would that employee obtain full reimbursement for those costs? Obviously not.

Reason and experience teaches us that, assuming more moderately priced accommodations were available, the most the state employee could be reimbursed for would be the cost of more moderately priced flight arrangements, meals and accommodations. If the state employee *chooses* to travel in an expensive fashion, the state employee would be free to do so but only at his or her own additional expense. However, under the majority's holding and rationale in this case, the results of the above hypothetical would be to allow the state employee to recover the full cost of the first-class flight, meals and accommodations (or at least allow full reimbursement if the employee's personal use of first-class travel and accommodations was of long-standing duration).

Such results are inconsistent with the meaning of "reasonable" as that word is commonly used. "Reasonable" as defined as: "4.a) not extreme, immoderate, or excessive b) not expensive." Webster's *New World Dictionary* 1183 (1972). When the legislature chose to modify the words "attorney fees" with the word "reasonable," it evinced a clear legislative intent that is contrary to the conclusion of the majority opinion. The conclusion of the majority renders the word "reasonable" surplusage.

The majority's holding that the $29,410.00 in attorney's fees awarded to Standard were reasonable under

sec. 32.28(1), Stats., is based, in part, on its conclusion that the counsel Standard retained in this case has represented Standard for thirty years. *See supra* at p. 743 and p. 750. The majority also notes that Standard's attorney had experience in eminent domain proceedings ". . . in excess of twenty years. . . ." Supra at 743. The majority then concludes, without analysis of the meaning of the word "reasonable" as used in the statute, that the fees charged by Standard's attorney were reasonable.

The majority's emphasis on the long-standing professional relationship between Standard and Mr. Daly to support its conclusion that the fees awarded to Standard were reasonable creates problems for future cases. Suppose a condemnation action is brought in one county, and the condemnee retains counsel from another county who has represented the condemnee only *once* before in another type of action, and whose hourly rates range between $150–$200. Would full reimbursement of the attorney fees charged by counsel under those circumstances be allowed? Suppose counsel in the above hypothetical had a professional relationship with the condemnee for three years. Would full reimbursement of attorney fees be allowed at that point?

A further problem created by the majority's focus on the long-term professional relationship between Standard and its attorney arises under circumstances in which a condemnee previously has utilized only the professional services of an attorney charging moderate hourly rates. If the condemnee now wishes to retain the services of an attorney who charges $100–$150 per hour to represent him or her in a condemnation proceeding because he or she believes that price reflects the quality of legal services rendered, will the condemnee be precluded from obtaining full reimbursement of attorney's fees at the rates charged by that attorney merely because he or she has not been fortunate enough

to establish a long-term professional relationship with that attorney? Under the majority's analysis, only those individuals used to having the most expensive legal representation (and perhaps the "best" if cost is any indication of quality) may be able to obtain full reimbursement of attorney's fees under sec. 32.28(1), Stats., at the rates charged by that attorney. However, those persons used to lower priced representation, or those who have never utilized legal services before, may be restricted to moderately priced representation in a condemnation action unless they are willing to pay the difference in fees between moderately priced counsel and more expensive counsel. I recognize that the nature and length of a professional relationship between an attorney and client is a factor that may be considered in determining whether fees charged by the attorney are reasonable. *See* SCR 20.12(2)(f). However, I disagree with the majority that merely because Standard and its attorney have a long-standing relationship, and because the attorney had prior experience in eminent domain proceedings, it automatically follows that the fees charged by Mr. Daly were "reasonable" within the meaning of the statute, and therefore fully reimbursable.

In determining whether the fees awarded to Standard were reasonable within the meaning of sec. 32.28(1), Stats., I would look to the factors set forth in SCR 20.12(2), and particularly, SCR 20.12(2)(c). That provision states in pertinent part: "(2) . . . Factors to be considered as guides in determining the reasonableness of a fee include the following: . . . (c) The fee customarily charged in the locality for similar legal services." Although SCR 20.12 does not specify what is meant by "the locality" in SCR 20.12(2)(c), I believe it is reasonable to conclude that under most circumstances, "the locality" for purposes of SCR 20.12(2)(c) refers to the locality where the action is brought, or a

similar locality, or a locality within a reasonable proximity to the site where the action is brought.[3] Under this analysis, the reasonableness of the fees charged by the attorney retained by a condemnee *ordinarily* would be judged in light of fees charged for similar services by attorneys in the locality as I have defined that term. However, a different situation might arise if the condemnee can demonstrate circumstances indicating that it was reasonable to retain counsel from outside the locality. Such circumstances include the fact that competent counsel was unavailable in that locality, or that, consistent with SCR 20.12(2)(a), a particular attorney or firm was needed because of the complexity of the matter or because it required special expertise. If the condemnee demonstrates such mitigating circumstances, the trial court could decide in its discretion to base an award of attorney's fees on prevailing rates for similar legal services in the locality where that attorney normally practices.

I believe that to interpret SCR 20.12(2)(c) as referring to fees for similar services charged by attorneys in the locality, unless the condemnee can demonstrate mitigating circumstances, is a more effective means of ensuring that the ultimate award of attorney's fees under sec. 32.28(1), Stats., will be "reasonable" within the meaning of the statute. If reasonable fees are determined, in part, by looking at fees charged for similar services by attorneys in the locality, this could discourage a condemnee from doing what Standard did in this case, namely, going far beyond that locality and retaining more expensive counsel. This could also discourage the situation in which, for example, a client from New York has property in Wisconsin that is subject to a con-

---

[3] For the remainder of this dissent, the word "locality" means the locality where the action is brought, or a similar locality, or a locality within a reasonable proximity to the site where the action is brought.

demnation action, and that client retains counsel from a large Chicago or New York law firm who charges hourly rates in excess of $300. Finally, this could avoid extensive and expensive travel costs that may be incurred, and that were incurred in this case, when counsel is retained from far beyond the locality.

I do not dispute that a condemnee is free to retain out-of-town (i.e., outside the locality as I have defined that term) or out-of-state counsel if he or she so desires. If the condemnee does retain outside counsel, however, the trial court might well conclude in its discretion that the fees charged are not fully reimbursable if they are higher than the fees charged for similar services in the locality, and if the condemnee cannot demonstrate any mitigating circumstances to justify retaining outside counsel. Under those circumstances, the state should not be required to fully subsidize the condemnee's choice of attorney.

This analysis of SCR 20.12(2)(c) is consistent with the way some federal courts have analyzed Disciplinary Rule 2–106(B)(3) of the ABA Code of Professional Responsibility, which is identical to SCR 20.12(2)(c), and other criteria similar to SCR 20.12(2)(c). In *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760 (7th Cir. 1982), the court noted that in determining whether attorney's fees awarded under sec. 706(k) of Title VII, 42 USC sec. 2000e–5(k) were reasonable, it was relevant to consider the fees customarily charged for similar services in the locality where the attorney normally practices. However, the court also noted that "the fee customarily charged for similar services in the locality where services are rendered is . . . relevant even where the attorney normally practices elsewhere. . . ." 670 F.2d at 769. The court stated:

"We think that a judge, in allowing an attorney's fee under Title VII or similar statute, has discretion to question the reasonableness of an out of town attorney's

billing rate if there is reason to believe that services of equal quality were readily available at a lower charge or rate in the area where the services were to be rendered.

"If, however, a party does not find counsel readily available in that locality with whatever degree of skill may reasonably be required, it is reasonable that the party go elsewhere to find an attorney. . . ." *Id.*

In *Avalon Cinema Corp. v. Thompson,* 689 F.2d 137 (8th Cir. 1982), the court considered whether an award of attorney's fees pursuant to 42 USC sec. 1988 was reasonable. The court cited factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), including the factor that a reasonable hourly rate is the "ordinary fee 'for similar work in the community.' " 689 F.2d at 140, quoting *Johnson,* 488 F.2d at 718. The court stated that if a plaintiff " '. . . can show he has been unable through diligent, good faith efforts to retain local counsel, attorney's fees under 42 USC sec. 1988 are not limited to the prevailing rate in the district where the case is tried.' " 689 F.2d at 140–41, quoting *Donaldson v. O'Connor,* 454 F. Supp. 311, 315 (N.D. Fla. 1978). In *Avalon,* the plaintiff retained counsel from Los Angeles to represent it in an action brought in Little Rock, Arkansas. The court approved as reasonable an hourly rate less than that charged by plaintiff's counsel, concluding that plaintiff could have found competent counsel closer to the site of the case for a substantially lower hourly rate.

The record in this case indicates that the hourly rates charged by Standard's attorney exceeded the rates charged for similar services by attorneys in localities similar to the locality where the condemnation action was brought. It is unclear from the record whether Standard attempted, but was unable, to retain competent counsel from the locality in which the action was brought, or from a similar locality, or a locality within a reasonable proximity to the site where the action was

brought. It is also unclear whether there were other mitigating circumstances that would support a conclusion that Standard's choice of counsel from outside that locality was reasonable, and that the fees charged were reasonable. Therefore, I would reverse the decision of the court of appeals and remand to the circuit court with directions to reconsider the reasonableness of the fees charged by Mr. Daly in light of the factors in SCR 20.12, and particularly, the analysis of SCR 20.12(2)(c) set forth in this dissent.

On a concluding note, I fear the long range implications for the practicing bar as well as the public could be negative. Justice is effectively denied when access to justice is denied because an aggrieved party cannot afford the cost of legal services. The legislature has recognized that problem and provided in some instances, such as here, that a prevailing party is entitled to be reimbursed for the cost of reasonable attorney fees. Because the majority opinion is contrary to law and the clear legislative intent expressed therein, I fear their conclusion could well evoke a negative response from the legislature which could cause grave harm to that concept.[4]

---

[4] Recent legislative history indicates that the legislature as a body has little understanding of the economic costs of practicing law. In 1981, despite this author's protestations, the legislature provided that privately appointed counsel for indigents could be reimbursed no more than $35 per hour for court time and $25 an hour for all other time. Those amounts remain law today. *See* sec. 977.08(4m), Stats. 1981–82. This author argued then that those amounts were totally inadequate in that they were barely sufficient to cover overhead costs, if that.