ESTATE OF TIERNEY: CRAWFORD, Appellant, v. TIERNEY and others, Respondents.

*No. 124 (1974). Argued September 30, 1975.—Decided October 30, 1975.*
(Also reported in 234 N. W. 2d 357.)

For the appellant there were briefs by *Brandon E. Crawford* of Superior, and oral argument by *W. L. Jackman* of Madison.

For the respondents there was a brief and oral argument by *John T. Oswald* of Duluth, Minnesota.

HEFFERNAN, J.   Upon the filing of the final account in the estate of Patrick Tierney, the probate judge found the attorney's fees in the amount of $6,964.75 to be unreasonable, and he reduced the fees to $2,650. The attorney for the estate has appealed, claiming that fees should be allowed in the full amount. We conclude that the fees as submitted in the final account were excessive and that a reduction was proper. However, we conclude that the appropriate fee to be allowed is $4,500.

In this case Attorney Crawford furnished all the legal services from the commencement of the probate proceedings to the preparation of the final account, which was filed on August 13, 1973. The record shows that the work usually done by an executor was performed by the attorney. The executor limited his services to the deposit of checks to his account. The inventoried assets of the estate were slightly in excess of $200,000. The attorney's fees were based on the suggested fee schedules of the Douglas County Bar Association. They were computed as follows:

| 5% on 1st | $ 15,000.00 | = | $ 750.00 |
| 4% on next | 30,000.00 | = | 1,200.00 |
| 3% on balance | 156,529.35 | = | 4,759.75 |
| | | | $6,709.75 |

| | | |
|---|---:|---:|
| Preparing Federal Estate Tax Return | $ 90.00 | |
| Serving as witness on proof of will | 15.00 | |
| Legal services in Special Administration | 150.00 | |
| | | 255.00 |
| Total | | $6,964.75 |

The executor of the estate, who is not a beneficiary under the will, did not enter into any agreement for attorney's fees. He made no objection to Attorney Crawford's charges in the final account. However, upon the filing of the final account, objections were made by the residuary beneficiaries. The trial judge who had been hearing the probate matter disqualified himself from the proceedings for the determination of a fee, and this proceeding was assigned to Judge HARRY E. LARSEN.

The trial judge asked that the attorney support his charges by an itemization of the time spent on each of the proceedings and matters considered during the course of the probate. The attorney did not keep time charges during the course of the probate but prepared an estimate which purported to show that 140 hours had been spent in the course of the probate.

The trial judge concluded that these estimates were too high. For example, he pointed out that the attorney's estimate of thirty-two hours for the preparation of the final account was unrealistic and that six hours would have been appropriate and that only sixteen hours, rather than thirty-two hours, should have been allocated to the preparation of the Federal Estate Tax Return. He also noted that some of the charges on an hourly rate were duplicated by lump-sum charges allowed for the same work. He found that, in some instances, the attorney had allocated an hour of time for the dictation of letters which were extremely brief. The trial judge concluded:

"There are a substantial number of additional weaknesses in the time estimate and it is my conclusion that I can give no weight to the time estimate . . . .

"Mr. Crawford, having kept no time records in this matter, having submitted no reconstruction of the time involved acceptable or helpful to me, and having offered no other testimony or evidence of the time reasonably required for a reasonably experienced and efficient lawyer to perform services such as those involved in this matter, I have no alternative but to rely on my own knowledge of and experience in probate practice."

Judge LARSEN proceeded to do just that and, in reliance upon his own experience, he said:

"[I]t is my best judgment that an experienced, efficient and prudent lawyer neither should nor would expend more than eighty hours in the performance of all legal services required in this proceeding from beginning to end. That allowance of time is sufficient to cover the special administration proceeding, the work involved with respect to the Federal Estate Tax Return and the appearance as a witness on the proof of the will."

During the course of the hearing, Attorney Crawford produced two witnesses, both practicing lawyers in Douglas county, one of whom had been the public administrator for many years. Both had extensive experience in probate practice, and both had reputations as skillful and experienced lawyers.

The public administrator, Axel B. Peterson, testified that, "The fees are in line with the usual charges by Douglas county attorneys with the size of the estate and the work involved." He further stated that the normal charges made by attorneys in the area were those set forth in the schedule of fees adopted by the Douglas County Bar Association. His basic conclusion was that he felt that the fees were in an amount that could reasonably be allowed for inheritance tax purposes.

Attorney James C. McKay, Sr., the other witness, testified that he did not keep a log of the time spent in the handling of probate matters and that his fees were

determined by the county bar schedule. He testified that the hourly rate for attorney's fees at the time of the hearing was $40 per hour. He said that, in the determination of fees, the amount of time an attorney must spend on the probate of the estate that should have been done by the personal representative should also be considered.

Attorney Crawford stated that $40 per hour was a normal fee for him to charge in other types of work. He acknowledged that his reconstruction of time charges could not be totally accurate and that it merely represented his best estimate of the time spent on the various phases of the probate proceeding.

On the basis of this evidence and taking judicial notice of his own experience in the handling of probate matters, the trial judge concluded that the chargeable time should not exceed eighty hours and that the appropriate rate per hour was $35. From this figure of $2,800, he subtracted $150 which had been approved as an additional fee for the special administration proceedings. In this manner he determined that the appropriate fee was $2,650.

Although there was some evidence to sustain the findings and conclusions of the trial judge, this court is not bound by the great weight and clear preponderance of the evidence test in the matter of reasonable attorney's fees. *Touchett v. E Z Paintr Corp.* (1961), 14 Wis. 2d 479, 111 N. W. 2d 419.

As we said in *Giffen v. Tigerton Lumber Co.* (1965), 26 Wis. 2d 327, 132 N. W. 2d 572, a trial court conclusion in respect to attorney's fees is subject to this court's determination of what is reasonable, because this court has firsthand knowledge of the value of legal services. We are obliged, therefore, to review independently attorney's fees whenever they are challenged on appeal. *Herro, McAndrews & Porter v. Gerhardt* (1974), 62 Wis. 2d 179, 184, 214 N. W. 2d 401. In *Herro,* we said:

" 'The things to be taken into consideration in determining the compensation to be recovered by an attorney are the amount and character of the services rendered, the labor, the time, and trouble involved, the character and importance of the litigation, the amount of money or value of the property affected, the professional skill and experience called for, and the standing of the attorney in his profession; to which may be added the general ability of the client to pay and the pecuniary benefit derived from the services.' "

The record shows without dispute that, although the amount involved in the estate was substantial, and therefore the proper handling of the litigation was of considerable importance to the beneficiaries and to the Wisconsin tax authorities, the problems presented were of a rather routine nature. The assets were substantially placed in trust and no unusual services in transferring securities were required of the attorney in the probate proceedings.

Although the attorney involved in this litigation is, according to the record, a highly skilled and competent practitioner, the services required were not of a particularly challenging nature. On the other hand, there is nothing to show that the estate was not handled expeditiously, and there is no evidence that any assets were wasted or allowed to dissipate in the course of the proceedings. The record indicates that the probate proceedings were well-handled.

We said in *Will of Willing* (1926), 190 Wis. 406, 415, 209 N. W. 602, that it is improper to charge a lump sum based almost entirely on the value of the estate. Nevertheless, that case recognizes that it is a factor to consider. It is, to some extent, the measure of the attorney's responsibility in the proceedings. We do not believe that the value of the estate should be used as a measure of ability to pay, for we have long ago come to the conclusion that legal services are just as valuable to the impoverished as they are to the rich, although

certainly indigency and poverty must be considered in setting fees. Accordingly, we do not consider the gross inventory as evidence of ability to pay but rather as an index of the responsibility entrusted to the lawyer. This responsibility was substantial. However, as we said in *Will of Willing,* consideration must be given to the difficulties that are encountered in the numerous steps that make up an entire probate proceeding. The record indicates that there were no contests of any sort, and the entire process went on without any controversy or legal difficulties. Nevertheless, we should not place a premium upon contested litigation, for a skillful lawyer may well avoid litigation that might ensue in the hands of a blunderer. We will not allow additional compensation merely because a contest ensues. The question in such instance must be whether the additional contested proceedings were reasonably necessary. In this case, all went smoothly—the mark of a good lawyer in proceedings of this kind.

The time involved in the probate was sharply disputed. The trial judge concluded that no more than eighty hours should properly have been allowed, while the appellant and his two witnesses estimated the time charged was not unreasonably excessive. The most that we can say, on the basis of the record, is that the actual time properly to be allocated to the probate of this estate lies somewhere between the estimate of the appellant and the estimate of the judge.

The appellant originally based his fee upon the schedule adopted by the Douglas County Bar Association. If such schedules are considered as minimum fees, they may well be in violation of the antitrust laws of both the state of Wisconsin and of the United States. This was the position taken by the United States Supreme Court under the facts of *Goldfarb v. Virginia State Bar* (1975), 421 U. S. 773, 95 Sup. Ct. 2004, 44 L. Ed. 2d 572. The

evidence in this case is nowhere near as strong as it was in *Goldfarb* to prove that the bar schedule was indeed a minimum fee. On the contrary, the trial judge stated that in Douglas county the fee schedule was considered as a maximum allowance, and on this appeal the appellant does not contend that he should be compensated on the basis of the original computation in accordance with the fee schedule. The constitutionality of the Douglas county minimum fee schedule is not before us. We note in passing, however, that the State Bar Association has abandoned its state minimum fee schedule because of antitrust reservations that were apparent to it even prior to the United States Supreme Court's decision in *Goldfarb*.

We also note that this court recently, in *State v. Sidney* (1975), 66 Wis. 2d 602, 609, 225 N. W. 2d 438, took judicial notice of the problems of economics that face the bar and said:

". . . the court recognizes that the cost of managing a legal office has increased and that the prevailing average rate now charged by attorneys in this state is $45 per hour."

The legislature has, by sec. 857.05, Stats., set the compensation for personal representatives at the rate of two percent of the inventoried value of the property. That fee is, of course, subject to the approval of the court and may be modified and increased in the event that there are unusual or extraordinary services rendered by the personal representative. Sec. 857.05 (3) provides that, where a personal representative is also the attorney for the decedent's estate, the court may allow him either the executor's commissions or the attorney's fees and may allow both the executor's commissions and the attorney's fees in some instances.

While, in the instant case, neither the attorney nor any member of his law firm acted as a personal repre-

sentative, the record indicates that, with a single minor exception, the personal representative's function was performed by the lawyer. That statutory executor's fee alone would have amounted to more than $4,000, almost $1,500 in excess of the amount allowed Attorney Crawford in this case. It is apparent to us that the $2,650 fee awarded by the trial judge was inadequate when measured against the statutory guideline of sec. 857.05 (1) and (2), Stats.

Bearing in mind the nature of the services, the amount of the estate, the present prevailing rate charged by lawyers in the state of Wisconsin, and the approximate time involved in the probate of the estate, we conclude, on the basis of the record and reaching our conclusions *ab initio,* that the sum of $4,500 should be awarded for attorney's fees. Such sum shall also be in payment of any further services that may be required in the preparation of an amended final account, amended tax returns, and other steps necessary to close the proceedings.

Since there was no contract in this case, we do not decide whether an attorney can in advance contract with the personal representative for the fee to be charged. Nevertheless, it seems apparent that some understanding should be reached prior to the inception of legal work, so that parties concerned, either in a probate case or in other types of litigation, will have a clear idea of the factors to be involved in setting the fee and, unusual contingencies aside, the approximate amount of the fee that will be charged. In probate matters, by statute, it is the probate judge's function, and ultimately this court's function, to determine the reasonableness of the fee. To the extent that that is possible, the basis for future fees should be clearly understood.[1]

---

[1] "EC 2–19 As soon as feasible after a lawyer has been employed, it is desirable that he reach a clear agreement with his client as to the basis of the fee charges to be made. Such a

*By the Court.*—Order vacated and cause remanded with directions to allow attorney's fees consistent with this opinion.

course will not only prevent later misunderstanding but will also work for good relations between the lawyer and the client. It is usually beneficial to reduce to writing the understanding of the parties regarding the fee, particularly when it is contingent. A lawyer should be mindful that many persons who desire to employ him may have had little or no experience with fee charges of lawyers, and for this reason he should explain fully to such persons the reasons for the particular fee arrangement he proposes." Code of Professional Responsibility (1969), 43 Wis. 2d xix.