IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Peter E. BERG, Attorney at Law.

Supreme Court

*No. 81–1936–D. Filed July 2, 1982.*
(Also reported in 321 N.W.2d 303.)

PER CURIAM. *Attorney disciplinary proceeding; attorney's license revoked.*

On October 12, 1981, the Board of Attorneys Professional Responsibility filed a complaint alleging five counts of unprofessional conduct against Peter E. Berg, an attorney who was admitted to practice law in Wisconsin in 1963, formerly practiced in La Crosse and now resides in Washington, D.C. The first count alleged that in 1974, while serving as secretary-treasurer and attorney for an educational foundation, the respondent

induced the officers of that foundation to make a $10,000 loan to the respondent's cousin, who was operating a construction company, without disclosing that his cousin had recently been released from prison, that he had alcoholic problems, that he was a relative and that the respondent had previously co-signed promissory notes for him to secure money because of the cousin's low credit rating. The Board alleged that the failure to disclose such information constituted a breach of the respondent's fiduciary relationship as an officer of and attorney for the foundation. It also alleged that the respondent was neglectful in his failure to define for the foundation's officers their responsibility for filing federal tax returns and information returns for the foundation, which may have jeopardized the tax-exempt status of the foundation. It was alleged that the respondent had failed and refused to surrender the foundation's corporate books and records despite written demands for them, that he told the Board that he had surrendered all such records to successor counsel in April of 1975, that in June of 1979, and just prior to the October 10, 1979, meeting of the district professional responsibility committee, the respondent turned over additional records of the foundation to successor counsel. The Board alleged that such conduct constitutes misconduct in violation of SCR 20.04 (4).

The second count of the complaint alleged that the respondent had negotiated a partial settlement of a wrongful death claim for $12,000 and that a check payable in that amount was endorsed by the clients and proceeds thereof deposited in the respondent's trust account. The respondent informed the clients that he would initiate a claim for wrongful death under the provisions of another insurance policy and represented to the clients that he should hold the proceeds in his trust account for six months pending completion of that claim in the

event it became necessary to reimburse the company for any overpayment of the claim. It was alleged that the respondent neglected to keep the clients informed of the status of their claims or the progress of any suits or settlement negotiations. After the clients complained to the Board, the respondent gave them a written account of his settlement of the wrongful death claim showing specified disbursements and attorney fees. He gave them a check drawn on his trust account in the sum of approximately $3,500, which was returned after presentation for payment because of insufficient funds. The client then visited Berg on the same day and obtained payment on the check shortly thereafter.

The clients questioned the propriety of certain disbursements listed in the settlement account. The respondent agreed to adjust the attorney fee and remove the fee for the forensic engineering firm, which had not been paid by the respondent. The clients were not aware that the respondent had previously been reimbursed by the settling insurer for the amount purportedly due that firm.

In his representation of the clients' daughter, who had suffered personal injuries in an automobile accident, the respondent obtained a settlement from the insurer in the amount of approximately $4,300, from which he deducted one-third as his attorney fee. He mailed the clients a check in the amount of $1,500, although the cover letter indicated the amount was to be $2,500. When this was brought to the respondent's attention, his secretary informed the clients that it was a clerical error and that a check for the proper balance would be sent promptly. Following additional telephone calls to the respondent's office, the clients received a check for $1,000 in March of 1980, but that check was not honored when presented for payment because there were not sufficient funds in the trust account. After several days the check was paid.

The Board also alleged that the respondent failed and neglected to complete the settlement of a life insurance claim in the sum of $1,000 on the life of the daughter of the clients, which he had agreed to do when he was retained by them.

The Board alleged that the respondent's unduly delaying of the disbursement of the settlement amounts in both cases, despite repeated requests for payment from the clients, and his failure and neglect to make an adequate and prompt accounting to his clients in the settlement of the wrongful death claim, as well as his misrepresenting to the clients that it was necessary for the proceeds of the first settlement to be held in trust pending completion of the claim against the other insurer, violated SCR 20.04(4), 20.32(3), 20.50(1) and 20.50(2).

Count three of the complaint alleged that in August of 1980, the respondent held in trust the amount of $5,000 as earnest money paid by persons offering to purchase a business. When the owners of the business could not perform the conditions required under the purchase agreement, the intended purchasers made demand for their earnest money, which the respondent stated he could not return because he had paid it to the owners. A subsequent audit of his trust account showed that as of August 28, 1980, he had insufficient funds in his account to repay the proposed purchasers and did not support his allegation that he paid the money to the owners. It was alleged that such conduct violated SCR 20.50(1) and 20.50(2).

The fourth count of the complaint alleged that in March of 1978, the respondent was retained to represent a client charged with attempted theft, who paid the respondent $180 as a retainer. Without explanation, the respondent failed to appear with his client at the initial appearance. After the judge rescheduled the appearance, the date of which was communicated by the

client to the respondent, the respondent again without explanation failed to appear. The trial judge permitted the client to enter a guilty plea in the absence of counsel and assessed a fine and costs. The client went to the respondent's office on several occasions, and he was finally repaid approximately $100. The Board alleged that at his appearance before the district professional responsibility committee, the respondent made misleading statements concerning the return of the client's retainer. It alleged that such conduct violated SCR 20.04(4) and 20.32(3).

Count five of the complaint alleged that the respondent was retained to represent a client in post-trial divorce proceedings to enforce support arrearages. A court order held the client in contempt upon adjudging him delinquent in support payments in the sum of approximately $8,500, but it held that the client could purge himself by executing a wage assignment of $50 per week. At a subsequent hearing, it appeared that the support payments commenced as ordered in October of 1976, but were discontinued on February 24, 1977. At that hearing the respondent testified that he had directed that the wage assignment ordered by the court be cancelled, without seeking modification of the court order, and he further testified that the support payments were discontinued upon request of an attorney who was not then connected with the case.

That attorney testified by affidavit that he had talked with the respondent by telephone on April 25, 1977, and that the respondent requested that he make no more direct payments to a named attorney but did not indicate that no further payments should be made to the ex-wife through the clerk of courts. The trial judge noted that the payments of support were stopped on February 24, 1977, and the first entry of the attorney in the case was on April 22, 1977, his first contact with Berg being three

days later, two months after the payments were stopped. It was alleged that such conduct violated SCR 20.04(4) and 20.32(3).

We referred the matter to the Hon. William C. Sachtjen as referee pursuant to SCR 21.09(4). On February 11, 1982, the Board filed an amended complaint adding a sixth count of unprofessional conduct:

In February of 1979, the respondent was retained to represent a client and her husband for injuries sustained by the client in an automobile accident. After numerous unsuccessful attempts to contact the respondent by telephone, the client talked with him, and he told her that the matter could be settled for $10,000. Subsequently, the respondent sent a blank release form to the client for her and her husband's signatures. When the client went to the respondent's office, he issued to her a check in the amount of two-thirds of the settlement, retaining the balance as his attorney fee. He did not show her a completed release form, nor did he show her any draft from the insurance company. When the client subsequently checked with the insurance company, she was informed that the settlement paid to the respondent was $12,000, and she received a copy of the draft paid to the respondent by the insurer, in the amount of $12,000. The audit of the respondent's trust account by the Board showed that he received that draft in November of 1979. It was alleged that such conduct violated SCR 20.04(4).

The respondent filed his answer to the amended complaint on March 24, 1982. He denied the material allegations of the first count and alleged that the matter had been the subject of civil litigation in circuit court commenced against him by the foundation. He alleged that the litigation had been fully completed and that an order dismissing the complaint with prejudice had been entered. He also denied the allegations of the second count and alleged that the clients received $1,000 in settlement of a life insurance claim.

As to the third count of unprofessional conduct, the respondent alleged that the matter is the subject of civil litigation now pending, and he denied that the clients have any money due them from himself or from the owners of the business. On the fourth count, the respondent alleged that his failure to appear on behalf of his client was inadvertent, that he was present in another court at the time the case was called and that, in any event, the resulting guilty plea and fine did not jeopardize the client. He alleged that he did not knowingly violate a court order, as alleged in count five, and he admitted to having received a check for $12,000, as alleged in the sixth count, and he stated that $2,000 had been disbursed for the benefit of the client to persons other than himself.

The parties entered into a stipulation on June 9, 1982, in which the allegations of the amended complaint, with the exception of count four, were admitted. The referee filed his report and recommendation with the court on June 9, 1982, in which he made findings of fact and conclusions of law consistent with the allegations of the amended complaint to which the parties had stipulated. He made a further finding that, as to count one, litigation had been commenced by the foundation against the respondent, which was settled on the basis of a compromise, with the respondent reimbursing the foundation for monies loaned and their out-of-pocket expenses, including a contribution toward attorney fees.

The referee recommended, pursuant to the stipulation, that the respondent's license to practice law in Wisconsin be revoked or suspended for an indefinite period of time, that within six months from the entry of an order of the court in the matter now pending between the proposed purchasers and the respondent referred to in the second count of the amended complaint, the respondent pay to the proposed purchasers, if so ordered by that judgment,

the sum of $5,000 or any amount ordered, that within six months the respondent reimburse the client in the matter set forth in the sixth count the sum of $1,333, that he discontinue his practice effective the date of this court's order and that he comply with the rules concerning notification of clients of the discontinuation of his legal practice and pay the costs of this proceeding within six months from the time the Board notifies him of the amount.

We hereby adopt the findings, conclusions and recommendation of the referee.

It is ordered that the license of Peter E. Berg to practice law in Wisconsin is revoked effective the date of this order.

It is further ordered that within six months from the entry of an order of the court in the matter now pending between the respondent and the parties identified in the second count of the amended complaint herein the respondent pay to the proposed purchasers the amount ordered.

It is further ordered that within six months of the date of this order the respondent reimburse the clients identified in the sixth count of the amended complaint the sum of $1,333.

It is further ordered that the respondent comply with the rules concerning notification of clients of the discontinuation of his legal practice.

It is further ordered that the respondent pay the costs of this proceeding in the amount of $3,217.71 within six months of the date of this order.