In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Frank X. KINAST, Attorney at Law.

Supreme Court

*No. 83–2245–D. Submitted on briefs October 3, 1984.—
Decided November 13, 1984.*
(Also reported in 357 N.W.2d 282.)

For the appellant there was a pro se brief by *Frank X. Kinast.*

For the respondent, Board of Attorneys Professional Responsibility, there was a brief by *Frank M. Tuerkheimer,* Madison.

PER CURIAM. *Attorney disciplinary proceeding; attorney publicly reprimanded.*

Attorney Frank X. Kinast appeals from the conclusion of the referee that Kinast had charged a clearly excessive fee for his representation of a client in a divorce proceeding and the referee's recommendation that Attorney Kinast's license to practice law in Wisconsin be suspended for 90 days, that he be ordered to pay the costs of the disciplinary proceeding, and that he be required to refund to his client the sum of $1,128.96. While we accept the referee's findings of fact and conclusions of law, we determine that a public reprimand of Attorney Kinast, together with the payment of costs of this proceeding and the refund to his

client recommended by the referee, is appropriate discipline under the circumstances of this case.

The facts are not disputed. Attorney Kinast, who has practiced for 36 years in Beloit and who has not previously been the subject of disciplinary action, undertook the representation of a woman in a divorce proceeding. The divorce was characterized as "amicable," "a relatively straightforward and easy divorce matter" with "nothing complicated whatsoever." For his services, Attorney Kinast collected a total of $6,028.96 from his client, including interest in the amount of $159.46.

The client was the respondent in the action commenced by her husband. Initially, she was not represented by counsel, but in April of 1980, she retained Attorney Kinast on the advice of a friend. She and her husband had been married for 24 years and had four children, two of whom were minors living at home at the time of the divorce. The wife was a high school graduate, 44-years-old at the time of divorce. Prior to consulting Attorney Kinast, she and her husband had agreed on the divorce itself, with custody of the children to be with her, and payment by the husband of $300 per month maintenance, mortgage payments totaling $4,500, and taxes and household bills on the couple's residence.

When she first met with Attorney Kinast at his office, the client asked about his fee for representing her. Attorney Kinast told her he required a $200 retainer, which she paid him, but when she asked about the total fee, Attorney Kinast responded, "We'll talk about it later." She asked about the total fee once again during the course of his representation, and he responded that they would discuss it later. Attorney Kinast testified that he told her that they would reach a mutually agreeable fee after the divorce proceeding

had terminated. He did not, however, tell his client the basis on which that fee would be calculated.

In the course of his representation, Attorney Kinast brought a motion to increase temporary support and succeeded in having that support raised from the $300 per month the husband had been paying voluntarily to $350 per month. The husband's attorney, David Collins, offered a stipulation by the terms of which the residence of the parties would be divided evenly, with the husband making mortgage and tax payments on the house while the minor children were residing there. The stipulation also called for the husband's paying $300 per month in support. With respect to property division, the only other assets involved were household furniture, an automobile, the husband's interest in a pension, and savings accounts.

Shortly before the date set for trial, Attorneys Kinast and Collins agreed to a property division which would give the wife the residence and require the husband to pay the $4,500 mortgage balance and property taxes until the minor children were emancipated. In return, the husband retained full rights to his pension and would not be required to make maintenance payments to his former wife—the $300 per month figure being deemed support of the minor children. This stipulation, by the terms of which the wife would receive 91 per cent of the couple's property, was read into the record at the divorce trial.

After the trial, Attorney Kinast called his client and asked her to come to his office to sign papers. When the client appeared one week later, he presented her with his fee, in the amount of $5,669, which was in addition to the $200 retainer she had already paid, and required her to sign a demand note in that amount, secured by a second mortgage on her house. Believing she had no choice but to agree, the client signed the

note, but she testified that she did not at that time think the fee was reasonable.

The client subsequently complained to Attorney Kinast that his fee was not reasonable, and a friend of hers threatened to report Attorney Kinast to the state bar if he did not reduce it. Attorney Kinast refused, but he offered a 10 percent discount if his fee were paid from the expected proceeds of the sale of the client's residence. The house was not sold, however, and the client subsequently sought Attorney Kinast's help to get a bank loan to meet expenses she had incurred. Attorney Kinast encouraged her to borrow enough money to be able to make at least partial payment toward his fee.

When the bank turned down the client's request for a loan, Attorney Kinast told her that he might be able to get her a loan through a private party, after first having suggested that she seek the funds from friends or from a private lender. Attorney Kinast secured that loan from a client of his in the amount of $9,000 at an annual interest rate of 16 percent, the same rate the bank had offered when it had first considered giving the woman a loan. Attorney Kinast deducted his fee from the $9,000 loan and gave the woman a check for the balance. The woman subsequently brought a civil action against Attorney Kinast to recover a portion of the fees she had paid him, and the matter was settled by Attorney Kinast's paying her $3,400 and paying $1,200 to the lawyer representing her in that proceeding.

The complaint of the Board of Attorneys Professional Responsibility (Board) alleged that Attorney Kinast had charged his client an excessive fee, in violation of SCR 20.12(1), and that by arranging the loan he had accepted employment on behalf of his other client under circumstances which would adversely affect the exercise of his independent professional judgment, in viola-

tion of SCR 20.28(1). On the basis of these facts, the referee, Attorney Rudolph P. Regez, Sr., concluded that Attorney Kinast had charged a clearly excessive fee but that he did not violate SCR 20.28(1) by arranging the loan. Rather, the referee expressed his belief that Attorney Kinast's conduct in collecting the fee as he did "is encompassed within the terms of [the excessive fee count] and goes to the seriousness of that complaint."

At the hearing in this disciplinary proceeding, Attorney Kinast testified that, to the best of his ability to estimate, he had spent between 30 and 35 hours in representing his client. The client's husband's attorney, David Collins, spent less than 15 hours on the divorce matter and billed his client $636, including $36 court costs. Attorney Collins, who had practiced law for 30 years and had a "relatively extensive practice" in domestic relations matters, testified that he was aware of only time-based fees charged in divorce matters.

Attorney Richard Hemming, who had practiced 15 years and handled some 500 domestic relations cases and has served for three years as a member of the state bar fee arbitration committee serving Rock county, testified that he charged his clients in divorce cases by the hour. Characterizing the divorce case which is the subject of this proceeding as "relatively straightforward and easy," he stated that, assuming Attorney Kinast spent 30 to 35 hours on the case, his fee was "grossly excessive." He stated his opinion that in this case a fee of $100 per hour would be excessive, and a fee of $125 per hour would be grossly excessive.

Attorney Kinast maintained that his representation of his client did her "about $25,000 worth of good," by which he was referring to the fact that he increased her share of the couple's marital estate from 50 percent to 91 percent. He stated that he had no recollection of

how he calculated his fee, but he had considered that the fee "should be somewhere between $5,000 and $6,000." He testified that he did not have an hourly rate in mind when he set the fee and that the result he obtained was the largest component in his determination. He specifically stated that the number of hours spent in the matter would not have mattered to him in setting the fee.

On Attorney Kinast's behalf, Attorney Steven Vollmer, a 1981 law graduate, testified that Attorney Kinast's fee was not clearly excessive. There was no testimony concerning the extent, if any, of Attorney's Vollmer's experience in domestic relations cases. Attorney Edward Grutzner, whose deposition was admitted in lieu of testifying at the hearing, stated that Attorney Kinast's fee was not clearly excessive but would have been had the property of the parties been equally divided between them. Attorney Grutzner, age 53, had practiced law for 28 years, but he gave no testimony concerning any experience he might have had in domestic relations cases. Finally, the Honorable Patrick Rude, the judge to whom the divorce action had been assigned and who, in fact, held a pretrial hearing and the divorce trial, testified that the only issue at the pretrial was property division, specifically, the valuation of the husband's pension, the household furniture and the life insurance policy. Judge Rude testified that he would have divided the estate evenly between the parties had the matter gone to trial on that issue and that he was not aware of any way that attorneys set fees in divorce cases other than on an hourly basis.

On the basis of this testimony, the referee recommended that, assuming Attorney Kinast had spent 30 to 35 hours in representing his client in the divorce, a fee of up to $1,500 would be reasonable.

On appeal, Attorney Kinast maintained that the ethical rule concerning the determination of the reasonableness of an attorney's fee, SCR 20.12,[1] does not require that an hourly basis be used. He emphasized his experience and reputation as a lawyer and the result he obtained on this client's behalf, which, in his opinion, "was not simple luck [but] a considered professional assessment by a seasoned careful attorney who knew the law, understood the judge, negotiated when the time was right for a favorable settlement, and then moved quickly to consummate that settlement." He argued that the referee's conclusion that his fee was excessive was

---

[1] SCR 20.12 provides:

"**Fees for legal services.** (1) A lawyer may not enter into an agreement for charge or collect an illegal or clearly excessive fee.

(2) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(a) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.

(b) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(c) The fee customarily charged in the locality for similar legal services.

(d) The amount involved and the results obtained.

(e) The time limitations imposed by the client or by the circumstances.

(f) The nature and length of the professional relationship with the client.

(g) The experience, reputation and ability of the lawyer or lawyers performing the services.

(h) Whether the fee is fixed or contingent.

(3) A lawyer may not enter into an arrangement for charge or collect a contingent fee for representing a defendant in a criminal case."

against the great weight and clear preponderance of the evidence.

Attorney Kinast objected to the referee's admission of testimony concerning SCR 20.06(6)(d), an ethical consideration which provides, in part, "Because of the human relationships involved and the unique character of the proceedings, contingent fee arangements in domestic relations cases are rarely justified." Attorney Kinast maintained that it was error to admit this evidence for the reason that the Board did not allege in its complaint that he had violated that ethical provision and, further, that the erorr was prejudicial. His argument is without merit, for SCR 20.06(6)(d) is relevant to the issue of setting fees in divorce actions, and it is a part of the rules of ethical conduct by which attorneys practicing in Wisconsin are bound.

Attorney Kinast also argued that the referee erroneously admitted testimony concerning the civil suit over his fee which was settled by compromise. That argument, too, is without merit for the reason that the testimony was admitted not to establish his liability but, rather, by way of mitigation of his conduct.

The Board took the position that Attorney Kinast's fee was clearly excessive under the circumstances of the divorce: it was uncontroverted that the divorce was amicable, the parties themselves had reached an informal agreement concerning custody, visitation, occupation of the house and payment of house expenses, as well as support, and Attorney Kinast's actual involvement in his client's representation was minimal. The Board pointed out that the husband's attorney's records showed that he had spent less than 15 hours in the representation of his client.

It is significant here that Attorney Kinast never told his client that his total fee would depend on the results of the divorce proceeding insofar as it concerned prop-

erty division. Although he may have understood that to have been the case, he told his client only that the balance of his fee would be determined at the conclusion of the case; he never told her on what basis that fee would be calculated. Consequently, there was no agreement by the client as to the amount of the fee or the basis on which it would be determined.

We have heretofore indicated the desirability of some sort of agreement between attorney and client prior to the attorney's undertaking the client's representation. In *Estate of Tierney*, 70 Wis. 2d 438, 447, 234 N.W.2d 357 (1975), we stated that ". . . it seems apparent that some understanding should be reached prior to the inception of legal work, so that parties concerned, either in a probate case or in other types of litigation, will have a clear idea of the factors to be involved in setting the fee and, unusual contingencies aside, the approximate amount of the fee that will be charged." The same admonition is set forth in our Code of Attorneys Professional Responsibility, at SCR 20.06 (6) (c) :

"As soon as feasible after a lawyer has been employed, it is desirable that he or she reach a clear agreement with his or her client as to the basis of the fee charges to be made. Such a course will not only prevent later misunderstanding but will also work for good relations between the lawyer and the client. It is usually beneficial to reduce to writing the understanding of the parties regarding the fee, particularly when it is contingent. A lawyer should be mindful that many persons who desire to employ him or her may have had little or no experience with fee charges of lawyers and for this reason he or she should explain fully to such persons the reasons for the particular proposed fee arrangement."

Here, the client asked Attorney Kinast on at least two occasions, once at the initial meeting with him, what his fee would be. Rather than give her an estimate or, at least, tell her the basis on which that fee would be com-

puted, Attorney Kinast put her off, saying that they would discuss the matter after the case had been concluded.

The Board argued that Kinast charged a contingent fee, which is generally proscribed in a domestic relations case by SCR 20.06(6)(d) and is required to be reduced to writing at the inception of the arrangement by SCR 20.06(6)(c). We reject that contention. It does not appear that Attorney Kinast's fee was determined solely on the amount of monetary value his representation afforded the client; rather, the basis on which he computed his fee emphasized the results he obtained on behalf of his client, perhaps to the exclusion of all other factors.

Although we are not bound to accept the referee's conclusion that the fee collected by Attorney Kinast was clearly excessive, *Estate of Tierney, supra,* p. 443, we agree with that determination. We also accept the referee's conclusion that a fee of $1,500 would have been reasonable under the circumstances of the divorce representation.

Having accepted the referee's conclusion as to what would constitute a reasonable fee in the divorce action, we accept the referee's recommendation that of the $6,028.96 collected from his client Attorney Kinast be required to refund the amount of $1,128.96, recognizing that he paid her $3,400 in settlement of her civil action against him. However, we do not accept the referee's recommendation that Attorney Kinast's conduct in this matter warrants the imposition of a 90-day suspension of his license to practice law in Wisconsin. We determine that a public reprimand is appropriate discipline under the circumstances. It is also appropriate that Attorney Kinast be required to pay the costs of this disciplinary proceeding.

IT IS ORDERED that Attorney Frank X. Kinast is publicly reprimanded for unprofessional conduct in this matter.

IT IS FURTHER ORDERED that within 30 days of the date of this order Attorney Frank X. Kinast pay to his client in the divorce proceeding which is the subject of this disciplinary action the amount of $1,128.96 as repayment of a portion of the total amount he collected from her as his fee in the divorce action.

IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Frank X. Kinast pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding in the amount of $6,064.03, provided that if the costs are not paid within the time specified, the license of Attorney Frank X. Kinast to practice law in Wisconsin shall be suspended until further order of the court.

WILLIAM A. BABLITCH, J., took no part.