In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Arthur William GUENTHER, Jr., Attorney at Law.

Supreme Court

*No. 84–732–D. Submitted on briefs April 3, 1985.—*
*Decided June 24, 1985.*
(Also reported in 369 N.W.2d 700.)

For Attorney Guenther there was a brief by *Robert J. Vander Loop* and *Vander Loop Law Office,* Oshkosh.

For the Board of Attorneys Professional Responsibility there was a brief by *Frank M. Tuerkheimer,* Madison.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

Attorney Arthur W. Guenther, Jr., appealed from the referee's findings and conclusions that he engaged in conduct involving dishonesty, fraud, deceit or misrepresentation by charging a client for his services on a basis other than that to which they had agreed and by charging another client fees computed on an hourly basis exceeding the number of hours actually spent on the

client's matter, that he failed to return client funds upon request, that he charged a client a clearly excessive fee, and that he took a second mortgage from a client in a divorce matter to secure a note for his fees, notwithstanding a court order prohibiting his client from encumbering the property involved. Attorney Guenther also appealed from the referee's recommendation that his license to practice law be suspended for one year for his misconduct and that he be required to pay the costs of the disciplinary proceeding.

The referee's findings of fact are not clearly erroneous, and we accept them; with one exception, discussed below, we accept his conclusions concerning Attorney Guenther's misconduct. We determine that a one-year suspension of Attorney Guenther's license to practice law in Wisconsin is appropriate discipline under the circumstances of this case. It is also appropriate, as recommended by the referee, that Attorney Guenther be required to return to his client that portion of the fees he collected which exceeded the amount to which he was entitled.

Attorney Guenther was admitted to practice law in Wisconsin in 1951, and he practices in Campbellsport. He has not previously been the subject of an attorney disciplinary proceeding.

In 1980, a woman named Hatch, who had been a client of Attorney Guenther for 20 years, consulted him concerning the sale of her farm. Prior to that time, Attorney Guenther routinely charged Mrs. Hatch a fee of one percent of the sale price for his services in representing her in the sale of her property. In this instance, however, Attorney Guenther charged her $3,347.50, an amount purportedly based on an hourly rate of $65 for Attorney Guenther's time on the matter and a rate of $25 per hour for the work of his paralegal assistant. In the sales transaction, Mrs. Hatch herself negotiated the terms of the sale; Attorney Guenther conducted the

closing. Attorney Guenther collected his fee from escrowed funds held for his client in his trust account.

Attorney Guenther's time records produced in the disciplinary proceeding would have justified a bill of $2,778 on the basis of the stated hourly rates, some $600 less than the fee he charged and collected. Attorney Guenther maintained that the discrepancy was the result of some of his time records having been lost. The time records he produced included five conferences with the buyer's attorney, for a total of 11.8 hours; however, the buyer's attorney produced his records and testified that no such conferences took place. Also, Attorney Guenther's records showed a charge of 2.3 hours for the closing, whereas the buyer's attorney testified that the closing took approximately three-quarters of an hour.

Attorney Guenther maintained that at some time during the 20 years that he had been representing Mrs. Hatch, he changed from a percentage-of-sale-price billing to an hourly rate of $65 or percentage-of-sale-price, whichever was greater, but he testified that he did not recall ever having told Mrs. Hatch of that change. His paralegel assistant, however, testified that she mentioned the change to Mrs. Hatch as Mrs. Hatch was leaving Attorney Guenther's office after the closing of some transaction, but there was no testimony that Mrs. Hatch agreed to that new method of billing.

The referee, Attorney Robert P. Harland, found that the fee agreement existing between Mrs. Hatch and Attorney Guenther as to the farm sale was on the basis of one percent of the sale price. He also found that Attorney Guenther's time records were totally inadequate and unreliable to support a fee based on time spent on the matter.

This same problem occurred in Attorney Guenther's representation of Mrs. Hatch in the sale of cattle and farm equipment, which sold for $23,000. Attorney Guenther charged her $935, which he collected from her funds

in his trust account, even though his time records in the matter totaled only $578.50. Here, again, the referee found that the fee agreement was the customary one percent of the sale price, that is, $230. The referee concluded that Attorney Guenther engaged in misrepresentation, in violation of SCR 20.04(4),[1] by billing Mrs. Hatch for his services in both sales at an hourly rate based on inadequate time records.

A third matter involving Mrs. Hatch concerned Attorney Guenther's failure to return to her those funds he retained in his trust account, specifically, the $5,000 held in escrow in connection with the farm sale. It was from these funds that Attorney Guenther collected his fees. The only fact in dispute was whether Mrs. Hatch asked Attorney Guenther to return the money. Mrs. Hatch testified that she asked him for it shortly after the closing and that Attorney Guenther told her he had not yet calculated his bill for services. She made another attempt to obtain the money shortly thereafter, but again Attorney Guenther told her he had not completed the billing.

Attorney Guenther, on the other hand, testified that Mrs. Hatch never requested the return of her money held in trust and that he held the trust funds to "protect" his fees. His paralegal assistant testified that she mailed a copy of Attorney Guenther's bill for the sale of the farm and for the cattle and equipment, as well as a letter notifying her that Attorney Guenther was holding $5,000 of hers in his trust account, asking whether she would like to have his fees deducted from the trust monies or a check for the full amount. Mrs. Hatch denied ever having received either the bill or the statement concerning the money held in trust.

---

[1] SCR 20.04(4) provides: "A lawyer shall not: . . .

"(4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

In finding that Mrs. Hatch requested the return of her money, the referee noted that Attorney Guenther delayed eight months from the date of closing before sending his bill to his client, offsetting his fees against the $5,000 held in trust for her. The referee concluded that Attorney Guenther's delay in returning his client's funds violated SCR 20.50(2)(d).[2]

In another matter, a man named Houdek retained Attorney Guenther in August of 1980 to represent him concerning a listing contract he had entered into for the sale of his property. The client had changed his mind about selling, and he wanted to avoid the obligation to sell his property under the terms of the contract. The realtor had accepted contingent offers on the property, but the contingencies were never resolved, and the listing contract expired on October 10, 1980.

At the time of retainer, the client had agreed to Attorney Guenther's charging $65 per hour for time spent on the matter. When he received a bill for $2,120, the client complained to Attorney Guenther, and an installment payment arrangement was agreed upon. Mr. Houdek paid $1,300 but then refused to make further payment.

The referee found Attorney Guenther's time records deficient to the extent that it was virtually impossible for him to defend or explain the nature of his services performed in the matter. The referee also found, from the time records, that Attorney Guenther billed his client for eight hours of time spent after the listing contract had expired. The referee concluded that Attorney Guenther's billing to his client constituted misrepresentation, in violation of SCR 20.04(4).

---

[2] SCR 20.50(2)(d) provides: "A lawyer shall: . . .
"(d) Promptly pay or deliver to the client as requested by a client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive."

In another matter, Attorney Guenther charged a clearly excessive fee to a client in a divorce matter. Attorney Guenther and the Board of Attorneys Professional Responsibility (Board) stipulated that the findings of the state bar's district fee arbitration committee be deemed to constitute the referee's findings in this matter. That committee found that the reasonable value of services and disbursements provided by Attorney Guenther in the matter should not have exceeded $9,500. Attorney Guenther, however, charged his client over $32,000. On the basis of the committee's findings and conclusions, the referee concluded that Attorney Guenther violated SCR 20.04(4).

In a final matter, Attorney Guenther admitted that he took a promissory note from a divorce client in the amount of $11,500 for legal fees to be earned in her representation in that action and that he also took a mortgage on marital property to secure that note, notwithstanding that the court had entered a temporary restraining order prohibiting both his client and the opposing party from encumbering marital property during the pendency of the action. The referee concluded that Attorney Guenther disregarded a court order, in violation of SCR 20.40(1).[3] The referee noted that, as of the date of the disciplinary hearing, Attorney Guenther had neither released the mortgage nor obtained a modification of the court's order.

Attorney Guenther offered in mitigation of the seriousness of his misconduct his 33-year "unblemished" practice of law. On that basis, he contended that his misconduct merits only a public reprimand. It appears,

---

[3] SCR 20.40(1) provides:

"(1) A lawyer may not disregard or advise a client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but the lawyer may take appropriate steps in good faith to test the validity of the rule or ruling."

however, that the referee took that fact into consideration in making his recommendation for discipline.

The referee noted that Attorney Guenther's attitude at the disciplinary hearing was to defend his unsupported fees and that he showed an unwillingness to correct his mistakes when his questionable practices were challenged. The referee questioned Attorney Guenther's continuing in his position regarding the mortgage of marital property to secure a note for his fees and his refusal to release that mortgage and apologize to the court for violating its order. It should be noted that, in his brief, Attorney Guenther alleged that he has released that mortgage of record, thereby making it unnecessary for this court to accept the referee's recommendation that he be ordered to do so.

The referee's findings of fact, based in large part on the credibility of the witnesses testifying at the disciplinary hearing, are not clearly erroneous, and we accept them. With the exception of that relating to the excessive fee matter, the referee's conclusions are accepted as supported by the evidence. Concerning Attorney Guenther's having charged an excessive fee in the divorce matter, the referee concluded that Attorney Guenther thereby violated SCR 20.04(4), which proscribes an attorney's engaging in misrepresentation. This, we believe, was an inadvertent error on the part of the referee. The Board had alleged that, by charging an excessive fee, Attorney Guenther violated SCR 20.12 (1), which provides: "A lawyer may not enter into an agreement for charge or collect an illegal or clearly excessive fee." Accordingly, we modify the referee's conclusion and determine that Attorney Guenther violated SCR 20.12(1) by charging an excessive fee.

We determine that a one-year suspension of Attorney Guenther's license to practice law is appropriate discipline in light of the seriousness of his misconduct, taking into account his having practiced for more than

30 years without being the subject of a disciplinary proceeding. It is also appropriate that Attorney Guenther return to his client, Mrs. Hatch, that portion of the fees collected which exceeded the percentage-of-sale-price in the two transactions. Our order for restitution does not affect the client's recourse to whatever civil remedy she might have.

IT IS ORDERED that the license of Attorney Arthur W. Guenther, Jr., to practice law in Wisconsin is suspended for a period of one year, commencing August 1, 1985.

IT IS FURTHERED ORDERED that Attorney Arthur W. Guenther, Jr., return to his client, Mrs. Hatch, the fees collected in excess of those to which the referee found he was entitled.

IT IS FURTHER ORDERED that within 120 days of the date of this order Attorney Arthur W. Guenther, Jr., pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing by Attorney Guenther of his inability to pay the costs within the time specified, the license of Attorney Arthur W. Guenther, Jr., to practice law in Wisconsin shall be suspended until further order of the court.

IT IS FURTHER ORDERED that Attorney Arthur W. Guenther, Jr., comply with the provisions of SCR 22.26 concerning the requirements of a person whose license to practice law in Wisconsin has been suspended.

SHIRLEY S. ABRAHAMSON, J. (concurring). I write separately to comment on the court's order for restitution to a client injured by an attorney's violation of the Code of Professional Responsibility. I do not write to object to restitution. I recognize the advantages

of this court's providing for restitution to a wronged client as part of an attorney disciplinary proceeding brought by the Board of Attorneys Professional Responsibility. When the court orders restitution in a disciplinary hearing, the client may be spared the expense and delays involved in initiating a separate civil proceeding against the attorney.[1]

---

[1] Substantially the same concerns exist regarding this court's ordering an attorney to pay restitution to a client-victim in a disciplinary proceeding as exist when a court orders a criminal defendant to pay restitution to the victim in a criminal proceeding. These concerns reflect differing assumptions about both the purposes of criminal or disciplinary proceedings and the purposes of restitution.

Standard 6.12 of the Standards for Lawyer Discipline and Disability Proceedings (ABA Joint Commitee on Professional Discipline of the Appellate Judges' Conference and the Standing Committee on Professional Discipline, 1979, as amended, 1983) (included in ABA National Center for Professional Responsibility, 1 Disciplinary Law and Research Procedure System (1984)) states: "The court may require a respondent to make restitution to persons financially injured by his willful conduct and to reimburse the client security fund." According to the commentary, "[w]henever possible, the disciplinary process should facilitate restitution to the victims of the respondent's misconduct without requiring victims to institute separate proceedings at their own expense."

In contrast, others argue that a civil proceeding, where a greater range of defenses is available to the attorney, is a fairer forum for adjudicating the relative rights of attorney and client than is a disciplinary proceeding, where the purpose is " 'to regulate the professional conduct of lawyers in the public interest.' " *In re Ackerman*, 263 Ind. 309, 311–12, 330 N.W.2d 322 (1975) (quoting *In re Case*, 262 Ind. 118, 311 N.W.2d 797 (1974) (DeBruler, J., dissenting)). In *The Florida Bar v. Winn*, 208 So. 2d 809, 810–11 (Fla.), *cert. denied*, 393 U.S. 914 (1968), the Florida Supreme Court stated, "Disciplinary proceedings are essentially a function of the Court instituted in the public interest and designed to preserve the purity of The Bar. No private rights except those of the accused attorney are involved."

Both contract principles and ethical considerations support the conclusion that an attorney should not profit from mis-

I write because I have several concerns about this court's practice in ordering restitution in disciplinary proceedings: the court's authority to impose restitution is not clearly set forth in the court's rules; the court has not articulated the rationale of ordering, or refusing to order, restitution in each case; the court's orders for restitution may not be consistent; and attorneys, clients, and the Board of Attorneys Professional Responsibility do not know their rights and responsibilities with regard to restitution.[2]

conduct and that restitution is appropriate in a disciplinary action. *See* Comment, *Attorney Fee Disgorgement as a Disciplinary Action,* 7 U. Puget Sound L. Rev. 547, 564 (1983–84).

[2] Wisconsin is evidently not alone in ordering restitution without express explanation. For cases from other jurisdictions, *see* Annot., *Power of Court to Order Restitution to Wronged Client in Disciplinary Proceeding Against Attorney,* 75 A.L.R. 3d 307 (1977).

Following are several Wisconsin disciplinary proceedings in which restitution appears as part of the order: *In re Disciplinary Proceedings Against Kinast,* 121 Wis. 2d 25, 357 N.W.2d 282 (1984); *In re Disciplinary Proceedings Aganist O'Niell,* 117 Wis. 2d 347, 343 N.W.2d 807 (1984); *In re Disciplinary Proceedings Against Swartwout,* 116 Wis. 2d 380, 342 N.W.2d 406 (1984); *In re Disciplinary Proceedings Against Peckham,* 115 Wis. 2d 494, 340 N.W.2d 198 (1983); *In re Disciplinary Proceedings Against Dugan,* 112 Wis. 2d 653, 334 N.W.2d 228 (1983); *In re Disciplinary Proceedings Against Seehafer,* 108 Wis. 2d 578, 322 N.W.2d 888 (1982); *In re Disciplinary Proceedings Against Berg,* 108 Wis. 2d 437, 321 N.W.2d 303 (1982); *In re Disciplinary Proceedings Against Millard,* 98 Wis. 2d 114, 295 N.W.2d 352 (1980); *In re Disciplinary Proceedings Against Klewin,* 97 Wis. 2d 701, 295 N.W.2d 11 (1980); *In re Disciplinary Proceedings Against Larsen,* 96 Wis. 2d 463, 291 N.W.2d 881 (1980); *In re Disciplinary Proceedings Against Spitz,* 95 Wis. 2d 527, 290 N.W.2d 682 (1980).

Conditioning reinstatement on an attorney's having made restitution often rests on a belief that restitution is an indicia of moral fitness to practice law. Courts have taken varying positions on this issue. See *In re Harris,* 88 N.J. L. 18, 22–23, 95 A. 761 (1915); *Petition of Stalnaker,* 150 Fla. 853, 863, 9 So. 2d 100 (1942); *In re Clark,* 406 A.2d 28 (Del. 1979). *Cf.* Note,

The disciplinary proceeding against Attorney Guenther involves charges of excessive fees to three clients. The referee ordered that the attorney pay restitution to one client. Upon review of the referee's decision, this court suspended Attorney Guenther's license to practice law for one year and further ordered "that Attorney Arthur W. Guenther, Jr., return to his client . . . the fees collected in excess of those to which the referee found he was entitled." The court does not cite statutory provisions or supreme court rules supporting this order. Neither does it indicate whether reinstatement is to be conditioned on satisfaction of the restitutionary order. Rather, the court explains the order for restitution in the following two sentences: "It is also appropriate that Attorney Guenther return to his client . . . that portion of the fees collected which exceeded the percentage-of-sale-price in the two transactions. Our order for restitution does not affect the client's recourse to whatever civil remedy she might have." Page 483.

No Wisconsin statute or rule explicitly provides for restitution to clients as a form of discipline or as a remedy in attorney disciplinary proceedings.[3]

Although SCR 11.01(2) provides that a client may recover any compensation paid to an attorney on account of the "contract of employment obtained or made in violation of" SCR 11.01(1), the Rule is silent about whether this kind of recovery should be made part of disciplinary proceedings.

---

*Victim Restitution in the Criminal Process: A Procedural Analysis*, 97 Harv. L. Rev. 931, 935–38 (1984) (summarizing the rehabilitative function of restitution in the criminal context and arguing that there are overlapping objectives in civil and criminal law).

[3] At least one compiler has interpreted our rules as not authorizing restitution. See ABA Center for Professional Responsibility, *Survey of Lawyer Disciplinary Procedures in the United States*, 14, 346 (1984).

SCR 21.06 provides that attorney misconduct is grounds for one or more of the following types of discipline:

"(1) Revocation of license to practice law (disbarment).

"(2) Suspension of license to practice law, including the imposition of conditions upon seeking reinstatement of the license.

"(3) Monetary payment.

"(4) Public or private reprimand.

"(5) Conditions upon the continued practice of law."

Arguably, an order for restitution fits within three of the five forms of discipline enumerated in SCR 21.06: restitution may be imposed along with suspension of license as a condition on seeking reinstatement of the licenses, SCR 21.06(2); restitution may be imposed as a monetary payment, SCR 21.06(3); and restitution may be imposed as a condition upon the continued practice of law, SCR 21.06(5).

Furthermore, even if the court's disciplinary order is silent on restitution, apparently the Board of Attorneys Professional Responsibility and the court may consider restitution when acting on the attorney's petition for reinstatement under SCR 22.28(4)(1). SCR 22.28 (4)(1) requires an attorney's petition for reinstatement to show that the attorney "has made restitution or settled all claims from persons injured or harmed" by the attorney's misconduct or, if restitution is not complete, to explain the failure or inability to do so.[4]

---

[4] One might question, however, whether the order in *In re Disciplinary Proceedings Against Dugan*, 112 Wis. 2d 653, 334 N.W.2d 228 (1983), would permit reinstatement unless full restitution were made. The court ordered that the disciplined attorney, in addition to having his license revoked for several violations of the Code of Professional Ethics, "be required to show that he has made *full restitution* to his clients in the malpractice, divorce and lease matters at such time as he applies for reinstatement of his license." 112 Wis. 2d at 656. (Emphasis added.)

Although this court has ordered restitution in numerous cases, it has not articulated its rationale for doing so. Rather, the court has ordered restitution without discussion. This silence is puzzling, considering this court's requirement that circuit courts explain their rationale in sentencing criminal defendants. Without articulated reasoning, discipline is likely to be inconsistent.[5]

The procedures which must be followed in a disciplinary proceeding are important for the protection of both the client and the attorney. Yet this court has not resolved several procedural issues. For example, this court has not explained the role of an aggrieved client in a disciplinary action. Is the client-victim merely a witness? Or may the victim be a party to the proceedings? In a recent attorney disciplinary proceeding, an aggrieved client petitioned to intervene as a party in

[5] In several cases the court ordered a restitution to a specified client in a specified amount and sometimes within a specified time. *See, e.g., In re Disciplinary Proceedings Against Kinast,* 121 Wis. 2d 25, 357 N.W.2d 282 (1984) (public reprimand); *In re Disciplinary Proceedings Against Swartwout,* 116 Wis. 2d 380, 342 N.W.2d 406 (1984) (public reprimand); *In re Disciplinary Proceedings Against Seehafer,* 108 Wis. 2d 578, 322 N.W.2d 888 (1982) (public reprimand; stipulation in disciplinary proceeding to make restitution to client); *In re Disciplinary Proceedings Against Berg,* 108 Wis. 2d 437, 321 N.W.2d 303 (1982) (revocation).

In other cases the court ordered the attorney to show that he or she had made restitution to specified clients on application for reinstatement of the license. *See, e.g., In re Disciplinary Proceedings Against Dugan,* 112 Wis. 2d 653, 334 N.W.2d 228 (1983) (revocation). *Compare, In re Disciplinary Proceedings Against Millard,* 98 Wis. 2d 114, 295 N.W.2d 352 (1980), in which the court ordered revocation of license and restitution to be paid within 4½ months and required the attorney to present satisfactory proof to the Board's attorney showing compliance with the order of restitution. In cases in which the court has coupled public reprimand with an order for restitution, the court has not always required proof of restitution.

order to assert her claim for restitution. According to the client's Petition to Intervene, the attorney had charged her a fee for services rendered while his license was suspended. The client entered into a Stipulation for Fee Arbitration with the attorney, which stipulation specifically said that the attorney's right to the fees would be arbitrated. According to the client's Petition to Intervene, the arbitration panel declined to decide whether the attorney was entitled to the fee in issue, explaining that it found no guidance in Wisconsin law on this question and that it was inappropriate for the question to be decided in an arbitration proceeding. The arbitration panel apparently believed that the issue of the attorney's right to fees charged while his license was suspended was better decided in the disciplinary proceedings before the Board of Attorneys Professional Responsibility (Board).

The Board's complaint against the attorney—while praying that the court declare fee contracts by a suspended lawyer to be void and retention of fees to be contrary to law—urged that this declaration be made prospective only. The client argued that unless she was allowed to intervene in the disciplinary proceedings, nobody would be advocating her position. She requested that she be allowed "to intervene in the disciplinary proceedings, solely for the purposes of participating in those parts of the proceedings dealing with [the attorney's] entitlement to legal fees for work done for clients during the period of his suspension and dealing with restitution of such fees as a remedy."

The court, without explanation, denied the client's motion to intervene. *See In re Disciplinary Proceedings Against Mel J. Cyrak, Attorney at Law,* Case No. 84–1748–D, order dated December 27, 1984. The disciplinary proceeding against the attorney was ultimately dismissed. *In re Disciplinary Proceedings Against Mel J. Cyrak,* 124 Wis. 2d 493, 369 N.W.2d 708 (1985).

Related to the role of the client-victim in the disciplinary action is the issue of how to establish the client's loss in the disciplinary proceedings. Is the client's loss to be confined to the particular matter raised in the proceedings or will the client be allowed to recover established losses caused by other conduct of the attorney?[6]

In some cases, this court specifies to whom restitution is to be paid, the amount of restitution to be paid, and the time by which payment is to be made. In other cases the court order is less precise. In one proceeding this court ordered the disciplined attorney to accompany his petition for reinstatement with "sufficient proof that *any* client who may have suffered *any* loss through the respondent's neglect has been *made whole* by the respondent." *In re Disciplinary Proceedings Against Klewin,* 97 Wis. 2d 701, 702, 295 N.W.2d 11 (1980) (emphasis added).[7]

Restitution also raises the question of whether money damages can be constitutionally determined in a disciplinary proceeding in which the attorney does not have the right to trial by jury. *See In re Ackerman,* 263 Ind. 309, 312, 330 N.E.2d 322 (1975).[8]

---

[6] Professor Abraham Goldstein has considered the problem of determining which claims are to be considered in ordering restitution in the criminal context. Goldstein, *Defining the Role of the Victim in Criminal Prosecution,* 52 Miss. L.J. 515, 536–42 (1982) (discussing 18 U.S.C. sec. 3651 (1976 & Supp IV 1980) and several state statutes).

[7] Restitution orders may be subject to challenge for vagueness. *See In re Cornelius,* 521 P.2d 497 (Alaska 1974) (challenge unsuccessful); *In re Case,* 262 Ind. 118, 124, 311 N.E.2d 797 (1974) (DeBruler, J., dissenting); *In re Ackerman,* 263 Ind. 309, 312, 330 N.E.2d 322 (1975).

[8] The right to a civil jury trial is guaranteed under art. I, sec. 5 of the Wisconsin Constitution. Two federal circuits have upheld against federal constitutional attack sec. 5 of the Victim and Witness Protection Act of 1982, 18 U.S.C. secs. 3579–3580 (1982), which requires a court to order restitution in criminal

When the attorney's reinstatement of license is conditioned on payment to client, the attorney's license is tied to the ability to make restitution. There may, therefore, be a violation of state or federal equal protection guarantees if the attorney is unable to pay the amount ordered.

In this context, restitution may raise issues analogous to those raised when an offender's probation is conditioned upon restitution to the victim. See *Huggett v. State*, 83 Wis. 2d 790, 803–04, 266 N.W.2d 403 (1978) (". . . the criminal justice system should not be employed to supplement a civil suit or as a threat to coerce the payment of a civil liability or to perform the functions of a collection agency") ; *Bearden v. Georgia*, 461 U.S. 660, 661–62 (1983) ("the trial court erred in automatically revoking probation because petitioner could not pay his fine, without determining that petitioner had not made sufficient bona fide efforts to pay or that adequate alternative forms of punishment did not exist").

Finally, the relation between restitution in a disciplinary proceeding and damages in a civil action is unclear. In this disciplinary proceeding the court enigmatically states that the court's order "does not affect the client's recourse to whatever civil remedy she might have." Recently, in *In re Disciplinary Proceedings Against Kinast*, 121 Wis. 2d 25, 357 N.W.2d 282 (1984), the court ordered that the attorney be publicly reprimanded for unprofessional conduct which involved charging a client an excessive fee for handling a divorce and further ordered that within 30 days of the date of the disciplinary order the attorney must pay the client the amount of $1,128.96, "recognizing that he had paid

cases or state on the record why it did not. *United States v. Brown*, 744 F.2d 905 (2d Cir.), *cert. denied*, 105 S. Ct. 599 (1984), and *United States v. Satterfield*, 743 F.2d 827 (11th Cir. 1984).

her $3,400 in settlement of her civil action against him."
*Id.* at 34. Prior to the disciplinary proceedings, the client had brought a civil action against the attorney to recover a portion of the fees she had paid the attorney by initiating and settling a civil action against him. The amount ordered in the disciplinary proceedings represented the difference between what the client had recovered in the civil action and what a reasonable fee would have been (according to the referee) for the divorce proceedings. In effect, then, this court in the disciplinary proceedings apparently nullified the settlement reached between two parties in a civil suit. In contrast, in *In re Disciplinary Proceedings Against Berg*, 108 Wis. 2d 437, 321 N.W.2d 303 (1982), the court, in addition to revoking the attorney's license because of five stipulated counts of misconduct, ordered him to pay named persons the sum of $5,000 or any amount ordered by the court within six months of the court order in a then pending civil suit. *Id.* at 443–44.

Much is at stake for both the attorney and the client in a disciplinary proceeding. I believe this court should clarify its rules regarding restitution and should develop appropriate procedures and guidelines for considering and awarding restitution.

For the reasons set forth above, I concur in the mandate, but do not join the opinion.